STATE, EX REL. JOHN HABERLAN, APPELLANT, v. DON L. LOVE, MAYOR, ET AL., APPELLEES.

FILED APRIL 24, 1911. No. 16,762.

1. Municipal Corporations: POWER OF LEGISLATURE: PENSIONS TO FIREMEN. It is competent for the legislature to require cities of the metropolitan class and cities of the first class to pension superannuated firemen and to pay those pensions from the funds of the fire department.

2. Constitutional Law: TAXATION: PENSIONS TO FIREMEN. Such legislation is not obnoxious to the declaration in section 7, art. IX of the constitution, that "the legislature shall not impose taxes

upon municipal corporations, or the inhabitants or property
thereof, for corporate purposes."

3. ———: LOAN OF STATE'S CREDIT: PENSIONS TO FIREMEN. Nor is the
legislation repugnant to section 3, art. XII of the constitution,
which provides that "the credit of the state shall never be given
or loaned in aid of any individual, association, or corporation."

4. ———: EXTRA COMPENSATION TO OFFICERS: PENSIONS TO FIREMEN.
Nor does such legislation contravene section 16, art. III of the
constitution, which provides that "the legislature shall never
grant any extra compensation to any public officer, agent, ser-
vant, or contractor after the services shall have been rendered
or the contract entered into."

5. Municipal Corporations: PENSIONS TO FIREMEN. A fireman, who in
1904, after more than 21 years' service in the fire department of
the city of Lincoln, elected to retire therefrom and to receive the
pension provided for by chapter 39, laws 1895, is entitled to that
pension.

6. ———: ———. A fireman entitled to a service pension, no part
of which is paid for injuries inflicted while in that vocation and
as a result thereof, may only receive the pension provided by
law at the time of his retirement.

APPEAL from the district court for Lancaster county:
ALBERT J. CORNISH, JUDGE. *Reversed.*

*W. C. Frampton, Price & Abbott* and *Lysle I. Abbott,*
for appellant.

*C. C. Flansburg* and *Leonard Flansburg, contra.*

ROOT, J.

This is a mandamus proceeding to compel the officers of
the city of Lincoln "to place plaintiff upon the retired
list of firemen in said city and pay him a pension of $50
a month, and that said pension be dated from April 1,
1904." No alternative writ was issued, but the respond-
ents filed a general demurrer, which was sustained by the
district court, and the relator's application was dismissed.
The relator appeals.

In 1895, the legislature, by chapter 39, laws 1895, pro-
vided: "That all metropolitan cities and cities of the first

class having a paid fire department, shall pension all fire-men of the paid fire department whenever such firemen shall have first served in such fire department for the period of twenty-one years, and shall elect to retire from active service and go upon the retired list. Such pension shall be paid by the city in the same manner as firemen upon the active list are paid, and such pension shall be twenty-five per cent. of the amount of salary such retiring fireman shall be receiving at the time that he goes upon such pension list." The act also directs that pensions shall be paid to firemen permanently disabled while in the line of duty, and that pensions shall be paid to the widows and the orphans of firemen whose death shall have been caused by injuries received while in the line of duty. By the amendment of 1909 the pension is in-creased to 50 per cent. of the fireman's salary at the time "he goes upon such pension list," provided the pension shall be at least $50 a month. Comp. St. 1909, ch. 30, sec. 11 *et seq.* The respondents' counsel contend that the statute is void because repugnant to section 7, art. IX, section 16, art. III, and section 3, art. XII, of the con-stitution.

Among other things, section 7, art. IX of the consti-tution, declares: "The legislature shall not impose taxes upon municipal corporations, or the inhabitants or prop-erty thereof, for corporate purposes." *State v. Wheeler,* 33 Neb. 563, is cited to sustain the proposition that a tax for the support of a fire department is levied for a cor-porate purpose, and from this statement and declarations subsequently made in *German-American Fire Ins. Co. v. Minden,* 51 Neb. 870, *Aachen & Munich Fire Ins. Co. v. City of Omaha,* 72 Neb. 518, *State v. Moores,* 55 Neb. 480, and *Lincoln Street R. Co. v. City of Lincoln,* 61 Neb. 109, the conclusion is reached that a city in maintaining a fire department exercises private and corporate rather than governmental power. The opinion in *State v. Wheeler, supra,* did turn upon the thought that the tax sought to be exacted from foreign insurance companies for the bene-

fit of the fire department in metropolitan cities was a tax for corporate purposes, but the subject was not discussed in the briefs upon the theory that a municipality may exercise governmental duties distinct from private or corporate functions, or that any distinction should be made between them, but rather it was assumed that, if the exaction should be classified as a tax, it was laid for a corporate purpose, and so the court following the arguments of counsel, said that the money demanded was a tax laid for corporate purposes.

In *German-American Fire Ins. Co. v. Minden, supra,* the decision rests solely upon the principle that the ordinance considered was void because no procedure for the collection of the tax, other than by a criminal prosecution, was provided.

In *Aachen & Munich Fire Ins. Co. v. City of Omaha, supra,* at page 530, in the commissioners' opinion, which the court adopted, it is said: "It is admitted by the demurrer that the assessment complained of was made by the tax commissioner of the city of Omaha for municipal purposes only." Upon this hypothesis the opinion was rendered.

On the other hand, in *Gillespie v. City of Lincoln,* 35 Neb. 34, in an exhaustive and well-reasoned opinion by Judge POST, this court held that firemen should be placed in the same classification as policemen and health officers; that they are public or state officers vested with such powers as the statute confers, and that the duties they perform do not relate to the corporate functions of the municipality. This opinion is sustained by the overwhelming weight of authority. 2 Abbott, Municipal Corporations, sec. 700; *Cunningham v. City of Seattle,* 40 Wash. 59, 4 L. R. A. n. s. 629, and note; *Brown v. District of Columbia,* 29 D. C. App. 273; *Phœnix Assurance Co. v. Fire Department,* 117 Ala. 631, 42 L. R. A. 468; *Firemen's Benevolent Ass'n v. Lounsbury,* 21 Ill. *511.

*Gillespie v. City of Lincoln, supra,* has not been criticised or in any manner discredited by this court, and must

be held to state the correct general principle of law.   In sustaining the right of the legislature to authorize the governor to select commissioners who shall appoint and control members of the police force and of the fire department in metropolitan cities, the functions of firemen are recognized as governmental rather than proprietary. *Redell v. Moores*, 63 Neb. 219.   So, therefore, while the city of Lincoln has the right, and in its charter is given specific authority, to assemble appliances for the extinguishment of fires, to employ firemen, and to levy and collect taxes to pay the expense of the fire department, and while that purpose is a public one, it is not a corporate purpose within the prohibition in section 7, art. IX of the constitution.

We do not understand that by enforcing the provisions of the statute the credit of the state is given or loaned in aid of any individual or corporation.   Section 3, art. XII of the constitution, was intended to prevent the state from extending its credit to private enterprises.   *Oxnard Beet Sugar Co. v. State*, 73 Neb. 66.

Section 16, art. III of the constitution, provides: "The legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor after the services shall have been rendered or the contract entered into."   The respondents insist that the statute under consideration offends against this part of the fundamental law.   A fireman's pension may be classified as part of his compensation for services rendered, or it may be said that it is paid to him for the purpose of stimulating all those engaged in a like public duty to prevent and suppress the destruction of property and the loss of human life incident to those conflagrations which the utmost vigilance may minimize, but cannot entirely prevent in populous cities. Within whichever class the pension may fall, public funds may be appropriated in conformity with legislative authority to pay the fireman, and the money is thereby expended for a public purpose.   Gray, Limitations of Taxing Power and Public Indebtedness, sec. 336; *Trustees of Ex-*

*empt Firemen's Benevolent Fund v. Roome,* 93 N. Y. 313;
*Phœnix Assurance Co. v. Fire Department, supra; Firemen's Benevolent Ass'n v. Lounsbury, supra.* And a pension granted to a fireman, who has served since the law became effective, cannot be said in reason to be a gratuity, nor the grant of extra compensation. *Commonwealth v. Walton,* 182 Pa. St. 373; *Commonwealth v. Barker,* 211 Pa. St. 610. The statute, therefore, does not contravene section 16, art. III of the constitution.

Finally, the respondents contend that, inasmuch as the relator did not serve as a fireman for 21 years subsequent to the enactment of chapter 39, *supra,* he is not entitled to a pension, and cite *State v. Ziegenhein,* 144 Mo. 283. In that case the statute construed provided: "That any person who shall serve as a policeman   *   *   *   for twenty years," etc., whereas, our statute directs that cities of a certain class shall pension "all firemen of the paid department whenever such firemen *shall have* first served in such fire department for the period of twenty-one years," etc. A comparison of the statutes demonstrates the inapplicability of the *Ziegenhein* case to the case at bar, and should convince the reader that the Nebraska legislature intended the statute to apply to all firemen who have served for the period of 21 years. Of course, the fireman must have been in the service and must have retired while the law was in force, because he must have elected to retire from the service before he could be placed upon the retired list, and he could not thus elect if he were not in the service. This brings us to an important feature of the case, and that is the relator prays for a writ to compel the respondents to enroll him as a retired fireman and to place his name upon the pension list. To this extent we are satisfied that the demurrer was improperly sustained.

The relator also asks that the respondents be compelled to pay him arrears of pension at the rate of $50 a month. Chapter 39, laws 1895, only authorized the payment of a pension to the extent of 25 per cent. of the fireman's sal-

ary at the time he retires from the service. The relator was being paid $80 a month at the time he retired in 1904, so that at that time he was entitled to a pension of but $20 a month. The enactment of 1909 increases the percentage to 50 per cent., but provides that at least $50 a month shall be paid. If the city of Lincoln had discharged its liability to the relator, he would have received no more than $20 a month prior to July 1, 1909. Clearly the city should not be penalized by increasing that obligation 150 per cent. So that by no fair construction of the statute should he be paid $50 a month from the date he ceased to serve as a fireman until the amendment of 1909. Whether coincident with the taking effect of that statute he became entitled to $50 a month is an important and interesting question.

In considering the right of the state to grant pensions, we enter an unexplored field from a local standpoint. In the constitution of 1866, the constitution adopted by the convention in 1871, but not ratified by the people, and in the constitution of 1875, the right of the state to loan its credit to individuals or to grant extra compensation to any officer of or contractor with the state is definitely and positively forbidden. At no time has the policy of the state encouraged the creation of an office-holding class. Rotation in office within the dominant party and rotation in office by the change in party control of state, county, city and village government has been a recognized feature of our civic life. It was not until 1871 that the congress of the United States seriously considered the subject of reform in the civil service and the creation of a force of permanent employees in government service, and agitation for the payment of pensions to civil officers is a subject of more recent development. The constitutional prohibitions just referred to were not formulated and adopted with a view to the eradication of evil practices then prevalent in the commonwealth. The state has generally, to say the least, been frugal in fixing official salaries, and it may have been anticipated that attempts might be made

by appropriations or *ex post facto* laws to favor individuals or to create charges upon the public treasury for services that others would have been willing to render for the compensation provided by law.

In applying these limitations to the instant case, it may be conceded that the pension forms an inducement to the individual to enter and remain in the service of the fire department, and that the pension in a sense is part of the compensation paid for those services. 2 Goodnow, Comparative Administrative Law, p. 74; Gray, Limitations of Taxing Power and Public Indebtedness, sec. 336. In this aspect of the case, if no part of the service was rendered subsequent to the enactmnt of the law, the compensation would be a gratuity forbidden by the fundamental law of the state. *Mead v. Inhabitants of Acton,* 139 Mass. 341. But the relator continued in the service nine years after the law was enacted, and thereby earned a right to his pension under that act so long as it shall remain in force. The amendment of 1909 does not repeal the act of 1895 so as to deprive the relator of his right to a pension; but, since he rendered the state no services subsequent to the enactment of that amendment to. increase his pension would violate section 16, art. III of the constitution.

The fact that some firemen earned their pensions by serving a comparatively short time subsequent to 1895, whereas others were compelled to continue in the service for a greater length of time, does not make the legislation void. The constitutional limitations do not apply to such conditions. The legislature is not restrained from paying unequal compensation for official services so long as its laws with regard thereto are general. Legislation must be couched in general terms, and in its application exact equality cannot always be obtained among individuals. These limitations do not restrain the legislature from appropriating money for the benefit of firemen disabled in the service while in the discharge of their duty, or for the benefit of the widow and the children of a fireman fatally

injured while in that service and in the line of duty.  It is a matter of common knowledge that the legislature appropriates money for the benefit of citizens injured while assisting in the capture of criminals, and its right to do so does not rest upon the principle that thereby compensation is paid for the time devoted to the public service, nor is the appropriation a gratuity, but it is justified upon the broad ground that the state owes the citizen a moral duty to pay him for injuries received while discharging a duty imposed by the necessities of the state upon all citizens, but which he has performed for them. The duty to extinguish conflagrations is also a public one, and the state is under the same moral obligation to its injured firemen that it owes to the citizen who is injured while assisting in the capture of a criminal.  The legislature may transform that duty into a legal obligation, and impose it upon the municipalities by statutes general in their application to the class of cities affected thereby, and, so long as the law is not repealed, that obligation will be enforced by the courts.

It therefore seems to us that the writ should not issue in the form prayed for, and ordinarily we would not hesitate to affirm the judgment of the district court  It may be the trial court was moved by some such considerations to deny the writ, but the arguments of counsel do not so advise us, and, in view of the importance of this case to the pensioners upon the rolls of the Omaha department who have appeared here by counsel, as well as to the relator, we hold that the judgment of the district court should be reversed and the cause remanded for further proceedings.

REVERSED.

REESE, C. J., and LETTON, J., not sitting.