STATE, EX REL. JAMES CONKLING ET AL., APPELLANTS, V. JOHN A. KELSO ET AL., APPELLEES.

FILED DECEMBER 18, 1912.    No. 17,600.

1. Constitutional Law: SPECIAL LEGISLATION: ACT FOR REMOVAL OF COUNTY SEATS. An act of the legislature, upon the subject of the relocation of county seats, which provides that no county seat shall be relocated, except upon a majority vote of three-fourths of the electors, in any case where the county seat has been located and retained for a period of ten successive years, "prior to the passage and approval of this act," in any one place, is void under the provisions of section 15, art. III, of the constitution of this state, as local and special legislation.

2. ———: ———: ———. A classification which limits its provisions to a certain class then in existence, excluding all others from ever entering such class by growth, development, or other cause, when applied to the relocation of county seats, is equivalent to the naming of the county seats within the class, and is thereby rendered local and special legislation. *State v. Scott*, 70 Neb. 685, followed.

APPEAL from the district court for Franklin county: HARRY S. DUNGAN, JUDGE. *Reversed.*

*C. C. Flansburg*, for appellants.

*George J. Marshall, contra.*

REESE, C. J.

This was an application to the district court for Franklin county for a writ of mandamus to the county board of said county directing it to call a second election for the removal of the county seat. It was alleged in the writ, in

State v. Kelso.

addition to the allegation of relators' capacity to maintain such an action, that Franklin county is under township organization, and respondents are members of the county board; that the village of Bloomington is, and has been for more than 25 years last past, the county seat of said county; that on the 8th day of July, 1911, a petition was filed, signed by more than three-fourths of all the electors of the county, as shown by the preceding general election, praying the board to call a special election for the re-location of the county seat; that the petition was found by the board to be sufficient, when it ordered that an election be held on the 29th day of August of that year; that due notice was given, and the election held, at which 2,251 votes were cast; that, of the votes cast, the village of Macon received 713, the city of Franklin 813, the village of Bloomington 670, the village of Upland 27, the village of Naponee 5, the village of Riverton 13, the village of Hildreth 5, the village of Campbell 1, the center of the county 3, and Ash Grove 1, all thereof being in the county of Franklin; that the votes were duly canvassed and found to be as above stated; that upon the same being reported to the board, and it appearing therefrom that more than three-fifths of all the votes cast had been in favor of places other than Bloomington, the then county seat, the relators demanded that said board immediately call a special election upon said question, but the request was denied, and the board refused to call the same. The prayer was for a mandamus compelling the board to call the desired election. The respondents demurred to the writ. The demurrer was sustained. Relators stood upon the writ, when the cause was dismissed. Relators appeal.

The controlling question in this case is as to the validity of an act of the legislature of 1905 (laws 1905, ch. 42), entitled "An act to amend section 4410 of Cobbey's Annotated Statutes of Nebraska for 1903, and repealing said original section." The act amended is contained in laws 1875, p. 159, and is carried forward into Ann. St. 1903 as sections 4410 to 4418, inclusive. It is not deemed neces-

sary to set out the act of 1875 in full. The substance of the act is to the effect that the county seat of any county may be relocated by a vote of three-fifths of the electors at an election called and held for the purpose of voting thereon, and that upon a petition of three-fifths of the electors to the county board it shall be the duty of the board to call such election; that, if no place receives three-fifths of the votes cast, another election shall be called and the question resubmitted, and, if any place receives three-fifths of the votes cast, such place shall be the county seat, except that, if the then county seat shall receive more than two-fifths of the votes at either of the elections, no further election shall then be called on the petition presented, and the county seat shall remain at its then place for at least two years, during which time no election shall be called upon that question.

The act of 1905 (laws 1905, ch. 42, Ann. St. 1911, sec. 4410) is as follows: "Whenever the inhabitants of any county are desirous of changing their county seat, and upon petitions therefor being presented to the county commissioners, signed by resident electors of said county, equal in number to three-fifths of all the votes cast in said county at the last general election held therein, and containing in addition to the names of the petitioners, the section, township, and range on which, or town or city in which the petitioners reside, with their age and time of residence in the county, it shall be the duty of such board of commissioners to forthwith call a special election in said county for the purpose of submitting to the qualified electors thereof the question of the relocation of the county seat. Provided, that in case any county seat has been located and retained for a period of ten successive years, prior to the passage and approval of this act, in any one place, the said place shall become and remain the permanent county seat of such county, unless such petition be signed by such electors equal in number to three-fourths of all the votes cast in said county at the last general election held therein. Notice of the time and place of

holding said election shall be given in the same manner, and said election shall be conducted in all respects the same as is provided by law relating to general elections for county purposes. The electors at said election shall designate on their ballots which city, town or place they desire said county seat located at or in, and any place receiving three-fifths of all the votes cast shall become and remain, from and after the first day of the third month next succeeding such election, the county seat of said county; provided, that in case any county seat has been located and retained for a period of ten successive years, prior to the passage and approval of this act, in any one place, it shall not be removed unless some other place shall receive three-fourths of all the votes cast at said special election." This act is practically a copy of the original section (laws 1875, p. 159, sec. 1; Ann. St. 1903, sec. 4410), but with the provisos added. By the first proviso, if the county seat has existed at any one place for ten successive years prior to the passage of the act, the petition asking a submission of the question must be signed by three-fourths, instead of three-fifths, of the electors. By the second proviso, if the county seat has remained in the same place for ten years prior to the passage of the act, another place must receive three-fourths of all the votes cast at the election, or no removal will result.

It is contended by relators that both of these provisos are violative of section 15, art. III of the constitution, and void, as local and special legislation. That section provides: "The legislature shall not pass local or special laws in any of the following cases; that is to say: * * * Locating or changing county seats." The vice of the act above quoted, if any, is found in the clause limiting the provisions to county seats which have been located for ten successive years "prior to the passage and approval" of the act. There can be no just objection to the classification of county seats, if such classification is general and could be applied to all counties in the state, should the county seat remain unchanged for a specified number

of years. This principle is recognized in *State v. Berka*, 20 Neb. 375; *Van Horn v. State*, 46 Neb. 62; *Livingston Loan & Building Ass'n v. Drummond*, 49 Neb. 200; *State v. Farmers & Merchants Irrigation Co.*, 59 Neb 1; *State v. Frank*, 60 Neb. 327, 61 Neb. 679; *State v. Stuht*, 52 Neb. 209. But in *State v. Scott*, 70 Neb. 685, a different rule is applied where the limitation closes the door to any further admission to the class, and the act is held to be the equivalent of naming the county seats to which the proviso is to be applied, and can never apply to any others, and to that extent it is both local and special legislation. We have examined the cases cited in *State v. Scott, supra*, and they support the holding in that case, and in addition we cite *Nichols v. Walter*, 37 Minn. 264; *Codlin v. County Commissioners*, 9 N. M. 565; 15 Am. & Eng. Ann. Cases, 856 *et seq*. The rule appears to be settled by an almost unbroken line of decisions that a classification which limits the application of the law to present condition, and leaves no room or opportunity for an increase in the numbers of the class by future growth or development, is special, and a violation of the clause of the constitution above quoted. It follows that the limitation in the act to all county seats which had existed for ten successive years at the time of the passage of the act, and not permitting the rule to be applied to other counties, is equivalent to the naming of the county seats of that class, and is therefore void. This being true, we are compelled to accept the law as it existed in the act of 1875 unchanged. There is no doubt but that the spirit of the law of 1905, could it be enforced, is salutary and desirable, and the attention of the legislature is called to the benefits to be derived from such an act, but with those words of limitation omitted. Whether a change of the county seat can be legally effected by an effort to follow the involved and complicated provisions of the act of 1875 is not now before us, and is not decided. The question may never arise.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.