STATE, EX REL. PHILLIP FISCHER, APPELLANT, V. CITY OF
LINCOLN ET AL., APPELLEES.

288 N. W. 499

FILED NOVEMBER 10, 1939.   No. 30582.

*Frank A. Dutton,* for appellant.

*Ralph P. Wilson, Clarence G. Miles* and *Frederick H.
Wagener, contra.*

Heard before EBERLY, PAINE, CARTER and JOHNSEN, JJ., and KROGER, District Judge.

JOHNSEN, J.

This is a proceeding in mandamus, to compel the city council of Lincoln and the chief of its fire department to reinstate relator (who will be referred to herein as plaintiff) as a fireman, on the ground that he had been discharged without a hearing. The trial court sustained a general demurrer to the petition, and, on plaintiff's election not to plead further, it dismissed the action. Plaintiff has appealed.

Plaintiff had been summarily removed from his position by the fire chief, and the city council ratified the discharge by refusing to give him a hearing. His contention is that he could not legally be removed except on formal charges, notice, and a hearing before the council.

The question accordingly is whether such charges and a hearing were required under the provisions either of the city charter or of the statutes of the state.

Lincoln is a city of the first class, with more than 40,000 and less than 100,000 inhabitants, having a commission form of government, and operating under a home rule charter. Its charter provides: "The city council * * * shall elect * * * as many officers, assistants and employees as may, in its judgment, be essential and necessary to conduct the government of the city. * * * Any such officers or any assistant or any employee appointed by the city council may be removed by the city council at any time. The city council shall have power, in its discretion, to discharge any officer or employee appointed or elected by it or to discontinue any employment or abolish any office at any time."

The charter thus expressly grants to the city council the general power both to appoint and to remove all subordinate officers and employees, at any time, in its discretion.

"A grant of general power to remove an officer from office ordinarily carries with it the right to remove him

at any time without notice or hearing." 99 A. L. R. 391, annotation.

"If the power to remove is given, expressly or by necessary implication, by words or terms denoting that it may be exercised in discretion, such power, to the extent thus given, is, *ex hypothesi,* one which may be exercised whenever in the mind and judgment of the donee of the power the fact or thing exists upon which his discretion is rested." 2 McQuillin, Municipal Corporations (2d ed.) sec. 574.

Indeed, even where the power of removal is not expressly conferred, the general rule is that a grant of the power to appoint is construed to carry with it, by necessary implication, a grant also of the unconditional power to remove, if the term of office is not fixed by law and the right to remove is not in any other manner restricted. 2 McQuillin, *op. cit.,* sec. 582; 19 R. C. L. 931, sec. 232; *Id.* 935, sec. 235; 99 A. L. R. 336, annotation; *State v. Wunderlich,* 144 Minn. 368, 175 N. W. 677; *Lyon v. Civil Service Commission,* 203 Ia. 1203, 212 N. W. 579; *State v. Archibald,* 5 N. Dak. 359, 66 N. W. 234.

In *State v. Smith,* 35 Neb. 13, 52 N. W. 700, we specifically held: "Where by law there is no fixed term of office and the incumbent holds during the pleasure of the appointing power, the power of removal is discretionary, and may be exercised without notice or hearing."

From these authorities it is clear that, in so far as the provisions of the charter are concerned, plaintiff has no ground for complaint because he was denied a hearing before the city council. The charter gives the council the power to discharge any appointee, at any time, without charges or a hearing, if it chooses to do so.

Plaintiff argues, however, that, apart from the charter, the ordinances of the city and the regulations of the fire department contemplate and entitle him to such a hearing. The petition sets out some ordinances which provide, in substance, that the chief may make such rules and regulations for the fire department as he deems advisable, with the consent of the council; that he shall keep a record of

all complaints against members and his judgment thereon; and that he may suspend from duty any member against whom a complaint has been made, until he has had an opportunity to examine the charges. Certain regulations of the fire department are also pleaded, which provide that preferred charges against a member must be made in writing and forwarded through the company officer to the chief; that officers shall report promptly to the chief, by well-sustained charges, any transgression of laws, ordinances, rules or orders; and that both company officers must sign any charges brought against a member.

These ordinances and regulations obviously are intended to provide a means of bringing grievances and complaints to the attention of the chief in an orderly and routine fashion; to require him to examine any charges made, for purposes of departmental discipline; and to enter a notation of his judgment or conclusion, presumably as a matter of service record exoneration or demerit. It may be supposed that, in getting at the facts of any situation, a fair-minded investigation will ordinarily include a discussion of the complaint with the person involved, even though there be no prescription for a formal hearing. But the legal concern in this case is not whether plaintiff was afforded such an opportunity for discussion with the chief; the controlling question is whether he could legally be discharged without a hearing before the city council. The ordinances and regulations cited involve, as we have indicated, only departmental routine and procedure. They do not, either expressly or by implication, make provision for a hearing before the city council, nor purport to impose any limitation upon the right of the council, under its plenary charter powers, to remove a fireman at any time and in any manner that it chooses to do so. Indeed (though the matter need not be determined here) there is substantial authority to the effect that a discretionary power of removal conferred by a charter cannot validly be limited by ordinance. 43 C. J. 652; 19 R. C. L. 931, sec. 232.

The city council, accordingly, had power, under the pro-

visions of the charter, to remove plaintiff without giving him a hearing. The remaining question is whether he was entitled to a hearing as a matter of statutory requirement.

Plaintiff relies upon the following provision of section 19-413, Comp. St. 1929: "Before any such officer or employee (appointed by the city council) can be discharged charges must be filed against him before the council and a hearing had thereon, and an opportunity given such officer or employee to defend against such charges." In *State v. City of Lincoln*, 101 Neb. 57, 162 N. W. 138, it was held that this provision was at that time applicable to the city of Lincoln. Lincoln was then operating, however, under such grants of power as had been made to it by statutes of the legislature, and not under a home rule charter.

The purpose of section 2, art. XI of the Constitution of Nebraska, providing that any city with more than 5,000 inhabitants "may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state," was to render such cities as nearly independent as possible of state legislation. *Consumers Coal Co. v. City of Lincoln*, 109 Neb. 51, 189 N. W. 643. Liberal judicial construction has encouraged this salutary assumption by municipalities of the powers and responsibilities of local self-government. *Sandell v. City of Omaha*, 115 Neb. 861, 215 N. W. 135; *State v. City of Milwaukee*, 190 Wis. 633, 209 N. W. 860. Recurrently we discover that democracy is only the hearth-shadow of local self-government and try to preserve the crackle of its flame.

The extent of the powers which may be incorporated in a home rule charter was defined in *Consumers Coal Co. v. City of Lincoln, supra,* as follows: "We hold that the city may by its charter under the Constitution provide for the exercise by the council of every power connected with the proper and efficient government of the municipality, including those powers so connected, which might lawfully be delegated to it by the legislature, without waiting for such delegation. It may provide for the exercise of power on subjects, connected with municipal concerns, which are

also proper for state legislation, but upon which the state has not spoken, until it speaks."

The constitutional limitation that a home rule charter must be consistent with and subject to the laws of the state simply means, therefore, that on matters of such general concern to the people of the state as to involve a public need or policy, the charter must yield to state legislation. This includes, as Judge Cardozo points out in his concurring opinion in *Adler v. Deegan,* 251 N. Y. 467, 490, 167 N. E. 705, 713, matters which, in a direct and substantial manner, are the subject of state concern, even though they may be also proper concerns of the municipality. In this latter field, however, until the superior authority of the state has been asserted by a general statutory enactment, the city may properly act under its charter. But in matters which are purely of local concern, or which only indirectly or remotely affect the people of the state outside the particular municipality, the provisions of a home rule charter will control over conflicting statutory enactments. *State v. City of Milwaukee, supra.* And the legislature cannot, even by a general law, affect the powers of a city under its home rule charter over matters which are essentially municipal affairs. *Pester v. City of Lincoln,* 127 Neb. 440, 255 N. W. 923; *City of Portland v. Welch,* 154 Or. 286, 59 Pac. (2d) 228, 106 A. L. R. 1188. The basic difference between a city operating under a home rule charter and one operating under statutory authorization is that the former's powers of local self-government are derived wholly from its charter, while the powers of the latter are dependent upon the extent of the grant which the legislature has made and the conditions and limitations which the statutes have imposed.

In contending that, in view of section 19-413, Comp. St. 1929, the city could not discharge plaintiff without giving him a hearing before the council, plaintiff has overlooked the fact that this statute was not operative against the city of Lincoln, after it adopted its home rule charter. The application of the statute is limited and it is not de-

signed to declare a general public policy. It is not a requirement imposed upon cities of the state generally, nor even upon all cities of a particular class, but is merely a condition or prescription made against such cities as desire to avail themselves of the optional right to adopt a commission form of government under the authority granted by the legislature in article 4, ch. 19, Comp. St. 1929. No such prescription has been attempted against cities operating under the statutes which authorize the general mayor and council system of government. If the city of Lincoln at the present time was operating its commission form of government under authority derived from the legislature, as it was at the time *State v. City of Lincoln, supra,* was decided, then, under the holding in that case, it would be subject to the prescription for a hearing which section 19-413, Comp. St. 1929, imposes. In adopting a home rule charter, however, the city had the right to make provision therein for any form of local government it desired, which was not in conflict with the letter and spirit of our Constitution. Its right to adopt a particular form of government was in no way dependent upon whether the legislature, by statutory enactment, had authorized such a form, nor was it subject to the statutory conditions and limitations upon which the legislature had authorized a city to adopt it. *People v. Perkins,* 56 Colo. 17, 137 Pac. 55; *In re Pfahler,* 150 Cal. 71, 88 Pac. 270. The requirement, in section 19-413, Comp. St. 1929, for a hearing before the council, therefore, had no application to the powers conferred by and exercised under the home rule charter.

Whether the legislature could, by general law and as a matter of public policy, require that no fireman in the state be discharged without a hearing before the city council is not now before us. No such statute is here involved. Nor do we have the right to pass upon the wisdom of the policy which the inhabitants of Lincoln have thus seen fit to adopt in their charter. All we can declare is that no question exists under present laws as to their power to do so. It may be added, for informational purposes, but without any

implication, that no pension rights are here involved, because the city of Lincoln is not required to provide a pension for its firemen. Comp. St. 1929, sec. 35-201.

For the reasons which have been set out, plaintiff cannot complain of the fact that the city council refused to grant him a hearing, nor can he claim that by virtue thereof his discharge was invalid. The trial court properly held that he was not entitled to a writ of mandamus to compel his reinstatement on that ground.

AFFIRMED.