GEORGE AXBERG ET AL., APPELLEES, V. CITY OF LINCOLN, APPELLANT.

2 N. W. (2d) 613

FILED FEBRUARY 20, 1942. No. 31244.

*Clarence G. Miles, Peterson & Devoe, Frederick H. Wagener, Max Kier* and *Chauncey E. Barney*, for appellant.

*Bernard S. Gradwohl, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

This is an action instituted against the city of Lincoln, seeking a declaratory judgment as to the rights, status and other legal relations of the parties under sections 2439 to 2442, inclusive, Comp. St. 1922, and for a further declaration that chapter 151, Laws 1923, purporting to amend said sections, is unconstitutional and void. From an adverse judgment defendant appeals.

The record shows that the city of Lincoln is a city of the first class, operating under a home rule charter adopted in 1918 pursuant to the powers granted by article XI of the Nebraska Constitution. The city maintains a paid fire department, and plaintiffs are all paid members of the department, who entered the employment since 1923. It is the contention of plaintiffs that they are entitled to pension benefits under the original firemen's pension law passed in 1895, and that an amendatory act passed in 1923 is unconstitutional and consequently does not affect their rights.

The original firemen's pension act provides in part as follows: "All metropolitan cities, and cities of the first class having a paid fire department, shall pension all firemen of the paid fire department * * *." Comp. St. 1922, sec. 2439. In 1923 the legislature amended this act to read in part as follows: "All metropolitan cities, and cities of the first class having a paid fire department, except any city of the first class that has heretofore adopted a charter for its own government, shall pension all firemen of the paid fire department * * *." Comp. St. 1929, sec. 35-201. In 1912 the Constitution of Nebraska was amended in part as follows: "Any city having a population of more than five thousand (5,000) inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state * * *." Const. art. XI, sec. 2. In 1918 the city of Lincoln, pursuant to this provision, enacted its home rule charter. The city of Omaha adopted its home

rule charter in 1922, and the city of Grand Island adopted its home rule charter in 1928. No other cities in the state have adopted home rule.

The first question to be answered is whether a statute relating to pensions for superannuated and disabled firemen is applicable to cities which have adopted a home rule charter under constitutional provisions. Under our Constitution, a home rule charter must be consistent with and subject to the Constitution and laws of this state. This means that a provision of a city home rule charter takes precedence over a conflicting state statute only in instances of strictly local municipal concern. *Carlberg v. Metcalfe,* 120 Neb. 481, 234 N. W. 87. This court has also held that the purpose of the constitutional provision is to render cities independent of state legislation as to all subjects of strictly municipal concern. *Consumers Coal Co. v. City of Lincoln,* 109 Neb. 51, 189 N. W. 643. Is the matter of firemen's pensions in metropolitan and first-class cities of strictly municipal concern?

The purpose of the home rule charter provision of the Constitution was to render the cities adopting such charter provisions as nearly independent of state legislation as was possible. Under it a city may provide for the exercise of every power connected with the proper and efficient government of the municipality where the legislature has not entered the field. Where the legislature has enacted a law affecting municipal affairs, but which is also of state concern, the law takes precedence over any municipal action taken under the home rule charter. But where the legislative act deals with a strictly local municipal concern, it can have no application to a city which has adopted a home rule charter. Whether or not an act of the legislature pertains to a matter of local or state-wide concern becomes a question for the courts when a conflict of authority arises.

We have come to the conclusion, after an examination of the authorities, that a statute providing for firemen's pensions is a matter of state-wide concern applicable to all cities within the designated class, whether they be home rule cities

or not.  In *City of Cincinnati v. Gamble*, 138 Ohio St. 220, 34 N. E. (2d) 226, the court said:

"Why has this court coupled together police, fire and health as objects of interest and moment to the whole state? Reflection reveals that there are certain basic reasons that impel such a course; and in conclusion it is well to state them briefly.

"The state, considered in relation to its subdivisions, is the imperium and as such by its very nature has state control in state affairs. Since the municipality is imperium in imperio only in the exercise of powers conferred upon it by the state Constitution, it must in all other respects be subordinate to state authority.  If fire, police and health departments be deemed purely matters of local self-government, they could be abolished and the state would be unable to step in.  Obviously the abolishment of any or all of them would affect state interests.  So would even impairment. Indeed, police and fire protection and health preservation are essential to the administration of state government in such a way as to accomplish vital purposes expressed in its organic law.  * * * The Constitution guarantees life, liberty and property and imposes upon the state the duty to protect and defend these rights.  That duty does not end at city limits.  Control of deadly, contagious diseases may often require uniform state action; prevention of fire may be ineffective without unified effort reaching into urban, suburban and rural sections; and the policing of the state might well be inadequate to public need if done by a state constabulary with power to act only in areas outside municipalities. The state must remain sovereign in all such affairs else its authorities cannot protect rights assured to its citizens by its Constitution.  These are fundamental reasons why police, fire and health undertakings are essentially attributes of state sovereignty and matters of state-wide concern."

In a similar case the Wisconsin supreme court said:

"So far as we have been able to discover in all jurisdictions where the question has arisen because of a conflict between a charter ordinance adopted under a home-rule provision

of a Constitution and an act of the legislature, the matter of police and fire protection has been held to be a 'matter of state-wide concern' * * *.

"The determination of other courts and a consideration of the fundamental reasons which underlie those determinations require us to hold that the preservation of order, the enforcement of law, the protection of life and property, and the suppression of crime are matters of state-wide concern." *Van Gilder v. City of Madison,* 222 Wis. 58, 267 N. W. 25.

And likewise in *Luhrs v. City of Phoenix,* 52 Ariz. 438, 83 Pac. (2d) 283, the court said:

"The jurisdictions that do not have freeholders' charters and also those that have are in accord in holding that the matter of providing pensions for superannuated policemen is of state-wide concern, and most of them agree that the matter of providing for and regulating city fire departments is state-wide. * * *

"We conclude that the matter of pensioning policemen, as also the matter of fixing a minimum wage for policemen and firemen, is of state-wide concern, and that chapters 40 and 43, *supra,* are valid pieces of legislation.

"We think the preservation of order and the protection of life and property and the suppression of crime are primary functions of the state * * *."

It is interesting to note that *State v. Love,* 89 Neb. 149, 131 N. W. 196, and *Adams v. City of Omaha,* 101 Neb. 690, 164 N. W. 714, are cited in support of this holding.

In *State v. Jost,* 265 Mo. 51, 175 S. W. 591, the court stated the rule in this language:

" 'In fact that section of the Constitution expressly provides that the city may adopt a charter for its own government, but it limits this by requiring that the charter so adopted must be "consistent with and subject to the Constitution and laws of this state." '

"In fact the very constitutional provision behind which respondents seek to hide, limits the scope of their charter powers. Such document, upon matters of general state concern, as is the peace and safety of its citizens, must be

subject not only to the Constitution, but the laws of the state as well. * * *

"There is therefore no substance in this contention of the respondents. A metropolitan police force is a matter of general state concern * * *."

It has been held that fire protection is a thing not only of local concern, but in which the general public has a vital interest. *People v. City of Springfield*, 370 Ill. 541, 19 N. E. (2d) 598. And it has also been held that the maintenance of a fire department is a matter of general public interest and not merely of local concern. *Hamilton v. City of Charleston*, 116 W. Va. 521, 182 S. E. 575. See, also, *Littell v. City of Peoria*, 374 Ill. 344, 29 N. E. (2d) 533.

Appellant cites *City of Pasadena v. Charleville*, 215 Cal. 384, 10 Pac. (2d) 745, and *Murphy v. City of Piedmont*, 17 Cal. App. (2d) 569, 62 Pac. (2d) 614. It is evident from a reading of these cases that they can have no application here. The provision of the California Constitution is so different from ours that in the *City of Pasadena* case the court was obliged to say: "By the charter amendment the powers of the city 'over municipal affairs became all-embracing, restricted and limited by the charter "only," and free from any interference by the state through general laws. * * * The result is that the city has become independent of general laws upon municipal affairs.' "

Appellant also relies upon *State v. City of Lincoln*, 137 Neb. 97, 288 N. W. 499, wherein it was held that the city council of Lincoln, under the provisions of its home rule charter, had the right to discharge one of its firemen without a hearing before the council as provided by a general statute. There are many cases holding that a home rule city has control over the personnel of its fire department because it is solely a matter of municipal concern, and hence not subject to legislative control. See cases cited in *City of Wewoka v. Rodman*, 172 Okla. 630, 46 Pac. (2d) 334. The court in *State v. City of Lincoln* also said, "for informational purposes, but without any implication, that no pension rights are here involved."

We do not think that this case sustains appellant's contention.

We conclude that pensions for superannuated and disabled firemen are matters of state-wide concern and that a statute providing for their payment applies to cities governed by home rule charters the same as other cities in the designated class. We think that the great weight of authority not only supports this rule, but the trend of the decisions of this court support the same view. See *State v. Nolan*, 71 Neb. 136, 98 N. W. 657; *State v. Love, supra; Carlberg v. Metcalfe, supra; Consumers Coal Co. v. City of Lincoln, supra; Sandell v. City of Omaha*, 115 Neb. 861, 215 N. W. 135; *State v. City of Lincoln, supra; Adams v. City of Omaha, supra.*

Appellees contend that section 35-201, Comp. St. 1929 (Laws 1923, ch. 151) is unconstitutional and void. The part of the statute under consideration provided: "All metropolitan cities, and cities of the first class having a paid fire department, except any city of the first class that has heretofore adopted a charter for its own government, shall pension all firemen," etc. It is apparent on the face of it that its operation is not uniform upon the designated class. Under its terms the city of Lincoln is not obliged to pay firemen's pensions while the city of Grand Island is required to do so, even though they are both cities of the first class. The freezing of the class in this manner has repeatedly been held to violate the uniformity provisions of section 18, art. III of the Constitution.

In *State v. Scott*, 70 Neb. 685, 100 N. W. 812, the court stated the rule as follows: "An act of the legislature which regulates a county office, and which by its terms limits its operation to counties having a population of 50,000 'according to the census of 1900,' is local and special in its application, since it can never apply to any other counties than the two which were in the class at the time of the passage of the act." See, also, *State v. Kelso*, 92 Neb. 628, 139 N. W. 226; *State v. Gering Irrigation District*, 114 Neb. 329, 207 N. W. 525; *White Construction Co. v. City of Beloit*, 189 Wis. 5,

206 N. W. 908; *State v. Dorland,* 56 N. J. Law, 364, 28 Atl. 599.

It is urged by appellant that section 18, art. III of the Constitution, does not prohibit the passage of special legislation where the situation cannot be properly remedied by a general law. It is also contended that there is no provision in the Constitution which forbids legislative classification of subjects for purposes of legislation where such classification is not arbitrarily made. We shall treat these two contentions together.

In *State v. Hall,* 129 Neb. 669, 262 N. W. 835, this court said:

"There is no prohibition against 'class legislation' by that name in the Constitution of this or any other state, or that of the United States, but the terms are used in decisions from all jurisdictions as a characterization of legislation in contravention of the Fourteenth Amendment to the Constitution of the United States providing: 'No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of its laws;' also state Constitutions and statutes prohibiting the enactment of special laws granting any special or exclusive privileges, immunities or franchises, or the passage of any laws for the benefit of individuals inconsistent with the general laws of the land. * * *

"The applicable provisions of our Constitution are found in section 18, art. III, providing:

" 'The legislature shall not pass local or special laws in any of the following cases, that is to say: * * * Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever. In all other cases where a general law can be made applicable, no special law shall be enacted.'

"A law to be general must operate uniformly upon all persons and localities of a class brought within the relations or circumstances provided for. *State v. Berka,* 20 Neb. 375.

It follows from this statement of the rule that a law is not general but special which does not operate uniformly upon the class within the relations or circumstances provided for." See, also, *Steinacher v. Swanson*, 131 Neb. 439, 268 N. W. 317.

And in *State v. Julow*, 129 Mo. 163, 31 S. W. 781, the court said: "The legislature may legislate in regard to a class of persons, but they cannot take what may be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered fractions of the original unit as two classes, and enact different rules for the government of each."

An authoritative text-writer says: "But a statute would not be constitutional * * * which should select particular individuals from a class or locality, and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempt. * * * Every one has a right to demand that he be governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments." Cooley, Constitutional Limitations (8th ed.) pp. 807-809.

We think that section 35-201, Comp. St. 1929, is not only void as local and special legislation in its application, but it is violative of section 18, art. III of the Constitution, in that it is not uniform as to class. There is no sufficient reason advanced why one city of the first class should be exempted from the special obligations and burdens of the firemen's pension law, while others in the same class are required to submit to such obligations and burdens. The attempt of the legislature, by the enactment of section 35-201, Comp. St. 1929, to divide the class constitutes arbitrary action, and the contentions of appellees to the contrary are without merit. It therefore violates section 18, art. III of the Constitution.

Having reached the foregoing conclusions, we do not deem it necessary to pass on the question whether chapter 151, Laws 1923, is violative of section 14, art. III of the Constitution, on the theory that the subject of the bill was not clearly expressed in the title.

We conclude that sections 2439 to 2442, inclusive, Comp. St. 1922, constitute a valid exercise of legislative powers and that such sections are applicable to all cities within the designated class, including home rule cities, for the reason that they involve matters of state-wide concern; and that chapter 151, Laws 1923 (Comp. St. 1929, secs. 35-201 to 35-204, inclusive), is unconstitutional and void as violative of section 18, art. III of the Nebraska Constitution. The conclusions reached by the trial court are therefore correct and, for the reasons herein stated, the judgment entered is affirmed.

AFFIRMED.

SIMMONS, C. J., dissenting.

The city of Lincoln governs itself by a home rule charter adopted under constitutional provision. The question is whether or not such a home rule city may be compelled by state law to pension its superannuated or disabled firemen. I am unable to join in that part of the majority opinion which holds that pensions for members of a paid fire department of such a city are a matter of state-wide concern.

The protection of life and property by the maintenance of a fire department is a matter of state concern. The question as to whether or not the members of a paid fire department shall be pensioned goes to the matter of their compensation and not necessarily to the maintenance of such a department. Whether or not a home rule city should pension its firemen is a matter for the home rule city, and not the state, to decide. It is a matter of local concern. The city of Lincoln, operating under its home rule charter should not, against its will, be compelled by state law to pension its firemen. I have several reasons for this conclusion.

First: The pensioning of the firemen is not shown to be necessary in order that a paid fire department be maintained. These pensions must be paid from city tax funds.

The city's obligation is to maintain an adequate fire department. If it decides that it should and does maintain such a department, without providing pensions for the members thereof, it has performed its governmental duty. To compel it to pension its firemen to meet a state need (if one exists) is to compel it to spend its tax revenues, not for a city, but for a state purpose.

Second: The decision of the majority is contrary to the intent and purpose of the home rule charter provision which is to render cities as nearly independent as possible of state legislation. *State v. City of Lincoln*, 137 Neb. 97, 288 N. W. 499.

Third: The decision of the majority is contrary to the reasoning of this court in *State v. City of Lincoln, supra.* See, also, *State v. Johnson*, 117 Neb. 301, 220 N. W. 273; *Schroeder v. Zehrung*, 108 Neb. 573, 188 N. W. 237.

Fourth: If the reasoning of the majority is to be followed, then almost any governmental action taken by a home rule city may be brought within the classification of "The preservation of order, the enforcement of law, the protection of life and property, and the suppression of crime" and declared to be a matter of state concern. To do so is to weaken, if not to destroy, the advantages of the home rule provision of our Constitution.

MESSMORE, J., dissenting.

The majority opinion states the general rule, supported by many foreign decisions, that the matter of firemen's pensions is of state-wide, rather than of local, concern. This holding does not conflict with our decision in *Munch v. Tusa*, 140 Neb. 457, 300 N. W. 385, for the reasons given in such opinion, and the cases are distinguishable. I am fully convinced that the broad language used in the decisions of this court with reference to home rule charters dictates a different rule to be made in this state than that formulated in the majority opinion. I quote from a few of the Nebraska decisions:

In *Consumers Coal Co. v. City of Lincoln*, 109 Neb. 51, 189 N. W. 643, the court held: "The purpose of the consti-

tutional provision is to render cities independent of state legislation as to all subjects which are of strictly municipal concern; therefore, as to such matters general laws applicable to cities yield to the charter."

In *Schroeder v. Zehrung*, 108 Neb. 573, 188 N. W. 237, the following language appears in the opinion: "If a city, after having adopted a home rule charter, was still to be subject to all the provisions of the former legislative charters, there could be no object or purpose in adopting a home rule charter."

It is apparent that the foregoing broad language is indicative that this state definitely intended home rule charters to place the government of the city in the hands of the people, who are most concerned about its development in fire and police protection, and other matters. A pension to be paid to firemen must, by necessity, be paid by the taxpayers of the city where the fireman is employed. This is a matter of compensation allowed on the basis of meritorious service as a fireman. The best judges of that meritorious service are those who have the authority to employ the personnel of the fire department and to watch their work through the period of time, to determine their competency and their right to compensation and a pension.

Suffice it to say that the people of the state generally, residing without the jurisdiction of a home rule charter city, should have nothing to do with the selection of the personnel of a fire department or the right to discharge any member thereof for inefficiency, and, further, should have no right to determine the necessary qualifications of such personnel, as far as their rights to pensions are concerned, and who, in fact, are not taxed in any manner to provide pensions; are not taxed in any manner to provide for even a portion of the salary of a fireman while employed, and assuredly are not entitled to a voice in the matter of pensions or compensation. That is to say, whether the city of Lincoln shall pay its policemen or firemen all they earn currently, or shall pay them part of their salary as it currently accrues, and the balance in the form of pensions, is certainly not such a matter of

general concern to the people of the state as to involve a public need or policy. If the people of the state are concerned with that question, they can be only indirectly or remotely affected.

Therefore, I am convinced that the most logical and reasonable rule to adopt in this state would be that a pension to be paid to firemen in the service of a home rule charter city, and,—to repeat,—to be paid by the taxpayers of such city, is a matter of purely local, and not of state-wide, concern.

I concur in that part of the majority opinion which holds that chapter 151, Laws 1923 (Comp. St. 1929, secs. 35-201 to 35-204), is unconstitutional and void.

Even though the majority opinion reflects the general rule and is adequately supported by authority, I am convinced, under the circumstances, that a rule, such as I have suggested, meets the requirements of this state and should be the law.

ROSE, J., concurs in both of the above dissents.

YEAGER, J., concurring.

After an examination of the dissenting opinions filed in this case, I feel obliged to point out the fallacies contained therein. No cases from jurisdictions having similar constitutional provisions which sustain the view therein expressed are pointed out. The rule contained in the majority opinion seems to have been uniformly followed.

It is said in the dissenting opinions that the pensioning of firemen is not shown to be necessary to maintain a paid fire department, and that the best judges on the question of pensions are those who have the authority to employ the firemen and to superintend and appraise their work. This is not a judicial question. It is clearly a legislative one which is of no concern to the courts. We have often said that we cannot substitute our judgment for that of the legislature on matters falling within the purview of the legislative branch of our government.

The contention that to require a home-rule charter city to pension its firemen is to compel it to spend its tax revenues for a state purpose and not a municipal one is disproved in

the dissenting opinions themselves. If such a reason was valid, the maintenance of a fire department by a city could not be prescribed by the legislature. In addition to that, nonhome-rule cities of the first class which are required by law to pension superannuated and disabled firemen could escape the provisions of the law by the force of the same reasoning.

The arguments and reasons stated in the dissents might well be advanced to the legislature where the membership may vote their personal convictions, but in this tribunal we must adhere to the principle of the administration of law by rule as distinguished from the whims and caprices of men. The legislature having determined the policy of the state, we are bound to acquiesce in its judgment on a matter purely legislative in character.