REQUESTED BY: Dear Senator:
You have asked our opinion as to the constitutional validity of LB 131. We have examined the bill, and conclude that it is of doubtful constitutionality in several respects.
Section 1 of the bill provides that taxing districts shall adjust their property tax mill levies so that the anticipated yield from any tax levy shall not exceed one hundred six per cent of the property tax revenue of the taxing district for the previous fiscal year for operating and maintenance purposes.
The Legislature has the right to limit the amount of money a taxing district may raise by taxation, by a mill levy limitation, or by a dollar limitation. However, we see a classification problem with respect to the first section of the bill. Were the Legislature to put a certain mill levy limitation on each taxing district, or even a dollar limitation on budgets, based upon some rational basis such as population, assessed valuation of property in the district, or something of that sort, it would probably be upheld.
However, this section of the bill would create the situation where two identical taxing districts would have different budget limitations, based upon what appear to be irrelevant considerations. The amount of the budget for a taxing district on the effective date of the act might have no relation whatever to its needs in the future. As a matter of fact, an abnormally low budget in one year might dictate an increased budget for ensuing years, to make up for past neglects. Yet this section would require, in perpetuity, that the various taxing districts have their budgets limited by the budgets in effect on the effective date of this bill, in spite of any changing circumstances, needs, or hardships. On the other hand, taxing districts which had high budgets on the effective date of the act could continue to do so.
In City of Scottsbluff v. Tiemann, 185 Neb. 256,175 N.W.2d 83 (1970), the court struck down a statute as constituting special legislation because it created a permanently closed class of cities, and because it was totally arbitrary and unreasonable in its method of classification. The court cited in support of its holding the case of Statev. Scott, 70 Neb. 685, 100 N.W. 812 (1904), in which it held that a classification of counties according to the census of 1900 was local and special in its application, since it could apply only to the counties which were in the class at the time of the passage of the act. See also State exrel. Conkling v. Kelso, 92 Neb. 628, 139 N.W. 226 (1912). The court has held that such classification violates ArticleIII, Section 18, of the Nebraska Constitution.
We believe that the court might find the same deficiencies in section 1 of LB 131. According to that section, each taxing district would be permanently limited by the budget that it happened to have on the effective date of the act. Besides the question of the permanent nature of the classification, we question the reasonableness of it. The purpose of budgets for taxing districts is to provide funds needed in the ensuing year for the purposes of the district. There is no logical relationship between the budget adopted, perhaps, many years ago, and the needs of that particular district for the next year. Yet that old budget would constitute the basis of an absolute limitation indefinitely into the future. We believe this constitutes suspect classification.
Section 2 of the bill provides:
 "Commencing fiscal year 1977-78 each county and each taxing district within a county shall impose property tax levies based upon the assessed valuation of property for the year 1975, until such time as each county in the state has new assessed values incorporated onto the tax rolls as the result of a reassessment program concluded subsequent to 1975."
The exact meaning of this section is not entirely clear to us, but we construe it to mean that the assessed valuations are not to be increased until all the counties in the state have reassessed their properties subsequent to 1975, when all the increased values all over the state would go into effect at the same time.
Such a provision appears to clearly violate several constitutional provisions. The assessed valuations referred to are, of course, the valuations of real estate. Obviously the freezing of assessed valuations could not apply to motor vehicles or to other personal property. Therefore, real estate might the assessed below its actual value, and be required to remain there, whereas personal property would be assessed at actual value. Article VIII, Section 1, of the Constitution requires taxes to be levied by valuation uniformly and proportionately upon all tangible property. The case of Homan v. Board of Equalization, 141 Neb. 400,3 N.W.2d 650 (1942), held that providing a method for fixing the valuation of read estate different from that provided for other tangible property violated Article VIII, Section 1, of the Constitution. It could also be argued that it violated Article III, Section 18 by creating unreasonable classification and granting special or exclusive privileges and immunities.
Article IV, Section 28, of the Constitution gives the State Board of Equalization and Assessment the duty of reviewing and equalizing assessments of property for taxation. As we understand section 2 of the bill, the board would be precluded from performing its duty, in the event it discovered that there was a lack of uniformity of assessment among the counties. The Legislature cannot prevent the board from exercising duties imposed upon it by the Constitution.
Section 3 of the bill provides that a taxing district which receives from any tax levy more than one hundred six per cent of its previous years budget shall place such excess in a fund to be `used to reduce taxes owed for the following fiscal year.' This language does not make clear what is intended. It may be that it means that this fund shall be taken into account in setting the ensuing year's levy. However, in speaking of reducing taxes owed for the following fiscal year, the impression is given that the fund shall be used as some sort of credit given to individual taxpayers against the tax they owe. If so, the basis of allocating such credit has not been made clear.
We believe it would be very difficult to sustain this bill against constitutional attack.