REQUESTED BY: Dear Senator Carsten:
You have asked our opinion as to the constitutional validity of LB 882. This bill would abolish the Personal Property Tax Relief Fund, established by section 77-202.30, R.R.S. 1943, and the provisions providing for the distribution of that fund, and would create the Local Government Revenue Fund, and provide for its discretion. In an opinion of this office dated June 15, 1978, Report of the Attorney General, 1977-1978, page 394, we expressed grave concern about the validity of the method of distributing the Personal Property Tax Relief Fund. LB 882 is, as we understand it, an attempt to correct some of the problems we discussed in that opinion.
Section 3 of LB 882 provides that the Tax Commissioner shall determine the amount distributed to each county during fiscal year 1979-1980 from the Personal Property Tax Relief Fund, and shall determine what percentage of the amount distributed from that fund each county receives. That section then provides that during fiscal year 1980-1981 each county shall receive that same percentage from the Local Government Revenue Fund. For ensuing years each county is to receive the same amount it received the proceeding year plus ten percent of the change in the total amount of general taxes levied in that county. Section 2 of the bill says that it is the intent of the Legislature each year to appropriate to the fund an amount equal to the amount appropriated the prior year, plus ten percent of the change in general taxes levied in the various counties.
Section 3 of the bill also provides that if in any year the appropriation is insufficient to pay the counties in full, the fund shall be prorated among the counties.
The money received by each county is to be distributed by the county to itself and other taxing entities in the county in the proportion that the property taxes levied by each taxing entity bear to the total property taxes levied in the county.
LB 882 corrects some of the problems we saw with respect to the distribution of the Personal Property Tax Relief Fund. The distribution of the money to the taxing entities within the county under LB 882 has a rational basis, and can be defended, whereas we do not feel that the distribution within the county of the Personal Property Tax Relief Fund can be.
Very serious problems remain, however, in the distributions to the counties. The distribution in 1980-1981 is to be in the same percentage as distributed in 1979-1980. The distribution in 1979-1980 was based upon losses by reason of personal property exemptions in each county in 1976, plus supposed losses in 1974 due to the freeport exemption under section 77-1226.01. There may be some question as to the propriety of the basis for the 1979-1980 distributions, and there is now pending a suit challenging those distributions. If the 1979-1980 distributions were based upon unreasonable classifications, as is contended in that suit, it may be difficult to sustain another year's distribution upon that shaky foundation.
However, let us assume the validity of the 1979-1980 distribution. LB 882 contemplates appropriating enough money for each year in the future to pay to each county the amount paid the previous year plus ten percent of the increase in property taxes. The amount paid to each county in 1979-1980 furnishes the starting point for that county. Assuming the Legislature adheres to its plan, and assuming that a county does not in any year reduce the taxes it levied the preceding year, the amount it receives may be regarded as being divided into two pots. Each year, indefinitely into the future, one of those pots will contain the same amount of money that county received in 1980-1981, which was based on the amount it received in 1979-1980, which, in turn, was based on that county's losses because of personal property tax exemptions in 1976 and freeport exemptions in 1974. So long as the Legislature appropriates the amount it says it plans to, and so long as the total amount of taxes levied in the county does not fall, that amount will be fixed.
The other pot will contain ten percent of the cumulative increases in taxes levied in the county starting with fiscal year 1980-1981. This amount will vary, but will not affect the amount in the first pot. The fact that both of the pots will be lumped together and the county will get one check does not alter the fact that the amount in the first pot will be frozen, perhaps forever, at the 1980-1981 figure.
We believe we have a classification question here. The State Treasurer could, at this moment, we suppose, make up a list of the 93 counties, showing exactly how much each has, or will, receive from the Personal Property Tax Relief Fund in 1979-1980, and could calculated the amount each county would receive from the Local Government Revenue Fund in 1980-1981. In a sense, then, each county constitutes a separate class, county A being in the class which gets $1,186,932.50, and county B being in the class which gets $834,675.25.
In 1981-1982, and forever into the future, assuming the Legislature appropriates the full amount required, each county will stay in the same class, so far as its basic `pot' is concerned. It will get neither more nor less, regardless of any change of circumstances, at least so long as its tax levies do not decrease. Variations in the amount of the second pot will not effect the amount in the first pot.
Our court has for many years held frozen classes to be in violation of Article III, section 18 of the Nebraska Constitution. In State v. Kelso, 92 Neb. 628, 139 N.W. 226
(1912), the court said:
 "The rule appears to be settled by an almost unbroken line of decisions that a classification which limits the application of the law to present condition, and leaves no room or opportunity for an increase in the numbers of the class by future growth or development, is special, and a violation of the clause of the constitution above quoted. It follows that the limitation in the act to all county seats which had existed for ten successive years at the time of the passage of the act, and not permitting the rule to be applied to other counties, is equivalent to the naming of the county seats of that class, and is therefore void. . . ."
Other cases which have invalidated acts freezing classes at the time of the passage of the act are State v.Scott, 70 Neb. 685, 100 N.W. 812 (1904); Axberg v. City ofLincoln, 141 Neb. 55, 2 N.W.2d 613, 141 A.L.R. 894 (1942); and City of Scottsbluff v. Tiemann, 185 Neb. 256,175 N.W.2d 74 (1970). See, also, 16A Am.Jur.2d, Constitutional Law, §§ 751 and 757.
Our attention has been called to Leonardson v. Moon,92 Idaho 796, 451 P.2d 542 (1969). On the facts, it could be in point, because it, too, appears to create a frozen class, and the act was sustained. However, the parties did not attack the classification on that basis, but on the basis that it was based on arbitrary unequal ratios of assessments and levies within the taxing districts. The court discussed the issue on the basis argued by the parties. Even if we felt that our court would be influenced by an Idaho decision which we do not feel could be squared with Nebraska precedents, we do not feel the court would be greatly awayed by a decision which did not discuss the vital issue.
We also recognize that the picture can be made more confusing and obscure if the Legislature fails to appropriate enough money to pay the counties in full, or if some of the tax levies for some of the counties fall. We will not lengthen this opinion by exploring all those possible ramifications. In any event, the effect of the amount received by each county in 1979-1980 will be carried into the future indefinitely, regardless of changed conditions. We believe the propriety of this is very questionable.
There is also a question of whether the amount received by the counties in a preceding year is a proper basis for classification, in any event. If it is, it would appear that the Legislature might, if it wished, perpetuate the status quo indefinitely by each year allocating to the counties the same amount or percentage as they received in the preceding year, long after the original basis for the allocation had disappeared.
Also, we point out that the basis of the 1979-1980 distributions was 1976 and 1974 losses to the counties because of personal property exemptions. LB 882 does not provide for reimbursement of such losses, and, indeed, cannot, because the current amount of such losses is unascertainable. LB 882 simply provides for state aid to political subdivisions. A legitimate question could be raised as to whether past losses because of exemptions is a reasonable basis for state aid to political subdivisions, particularly since the money is distributed in the counties on an entirely different basis.
In summary, LB 882 is an improvement on the present law, in that distribution within the counties is made on a defensible basis. The distributions to the counties, however, would, we believe, be hard to defend.