MIDWEST EMPLOYERS COUNCIL, INC., A NEBRASKA CORPORATION, ET AL., APPELLANTS AND CROSS-APPELLEES, V. CITY OF OMAHA, NEBRASKA, A MUNICIPAL CORPORATION, ET AL., APPELLEES AND CROSS-APPELLANTS.

131 N. W. 2d 609

Filed December 4, 1964. No. 35734.

Kennedy, Holland, DeLacy & Svoboda and Clarence E. Heaney, Jr., for appellants.

Herbert M. Fitle, Bernard E. Vinardi, Frederick A. Brown, Edward M. Stein, Sebastian J. Todero, Walter J. Matejka, and Frederick S. Geihs, for appellees.

Leo Eisenstatt, Arnold Forster, Sol Rabkin, Paul Hartman, Robert C. Oberbillig, McGrath, North & Macnamara, and Thomas D. Carey, for amici curiae.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, and BROWER, JJ., and DIERKS, District Judge.

MESSMORE, J.

This action was brought by the Midwest Employers Council, Inc., a Nebraska corporation, and the United States Check Book Company, a Nebraska corporation, plaintiffs, against the City of Omaha, a municipal corporation of the metropolitan class, the mayor and councilmen of the city, members of the human relations board of the city, the acting director of the human relations board, and the chief of police of the city, defendants. This action was brought by the plaintiffs pursuant to the Nebraska Uniform Declaratory Judgments Act, sections 25-21,149 to 25-21,164, R. R. S. 1943, and the object of the action was to obtain an adjudication that ordinance No. 22026, passed by the city council for the city on February 6, 1962, and having an effective date of February 22, 1962, was null and void, and to enjoin the defendants from enforcing this ordinance against the plaintiffs. The ordinance seeks to regulate employment practices in private business within the city of Omaha.

Both the plaintiffs and the defendants moved for a summary judgment on the basis that there was no genuine issue of material fact, and that each party was entitled to a judgment as a matter of law.

The trial court entered a summary judgment holding that the city of Omaha had the power to pass ordinance

No. 22026; that the state had not preempted the field of labor relations and fair employment practices; that the ordinance did not violate the Constitution of this state except as hereinafter noted; that the ordinance did not create a new board without a majority vote of the electors of the city of Omaha in contravention of the Omaha home rule charter; and that the ordinance did violate either Article I, section 3, or Article III, section 18, of the Constitution of this state, or both, in connection with its definition of an "employer," a "person," and the penal portion of the ordinance. The court found that the ordinance had a severability clause, and held that the ordinance was a valid and constitutional enactment, excepting only the following portions which it declared to be invalid and unconstitutional: Section 14.04.030. "Unfair Employment Practices Prohibited * * *. Unfair employment practices are hereby prohibited." Section 14.04.060. "Penalty for violations. Any person, persons, firm or corporation who violates any of the provisions of this Chapter, shall, upon conviction, be fined in any sum not to exceed Five Hundred Dollars ($500.00) or be sentenced to be imprisoned not to exceed six months in jail, or any combination of such fine and imprisonment for each offense, at the discretion of the Court."

The court rendered judgment enjoining the city, its mayor, and chief of police from directly or indirectly enforcing the ordinance as against the plaintiffs to the extent that the ordinance was declared invalid and unconstitutional.

The plaintiffs filed a motion for new trial, and the defendants also filed a motion for new trial. Both motions for new trial were overruled. The plaintiffs appealed to this court.

Pursuant to a stipuation filed in this court, the appeal of the defendants was dismissed, without prejudice to their right to file a cross-appeal, and the plaintiffs were designated as appellants and the defendants as appellees.

The Midwest Employers Council, Inc., is a corporation

organized and existing under the laws of this state with its principal place of business in the city of Omaha, and is a taxpayer of the city of Omaha.

The United States Check Book Company is a corporation organized and existing under the laws of this state, with its principal place of business in the city of Omaha, and is a taxpayer of the city of Omaha.

The City of Omaha is a municipal corporation of the metropolitan class organized and existing under and by virtue of the Constitution and laws of this state, and is governed by a home rule charter.

The appellants' amended petition alleged that the City of Omaha was without power to legislate in the field of fair employment practices and civil rights as between its citizens because such power has neither been expressly nor impliedly granted to the city by either the Constitution or statutes of this state; because fair employment practices and civil rights are matters of state-wide concern and not matters of purely local or municipal governmental concern; and because the state has preempted the field of civil rights and fair employment; that the ordinance is violative of certain Articles and sections of the Constitution of this state; that the ordinance contravenes Article IV, sections 4.04 and 4.08 of the home rule charter of the city for 1956, in that the ordinance purports to broaden and enlarge the power of the human relations board, and, in effect, creates a new board without a majority vote of the electors of the city; that the appellants are taxpayers of the city and subject to ordinance No. 22026; and that the appellees will, unless enjoined from doing so, enforce ordinance No. 22026 of the city against the appellants. The petition then prayed that the court take jurisdiction of this matter and find ordinance No. 22026 of the city to be illegal, invalid, and unconstitutional; that the court permanently enjoin the appellees, and each of them, from in any manner enforcing the ordinance as against the appellants; and that the ordinance be declared null and void.

The appellees' answer was in effect a general denial of the plaintiffs' petition and amended petition, except such allegations as were specifically admitted in the answer; and prayed for a dismissal of the appellants' petition and that the court find ordinance No. 22026 to be constitutional and valid.

The facts were stipulated by the parties and are as follows: On February 6, 1962, the city council of the city of Omaha passed ordinance No. 22026 having an effective date of February 22, 1962. Both appellants in this action, the Midwest Employers Council, Inc., and the United States Check Book Company, Nebraska corporations, have their principal offices in the city of Omaha; both employ more than three employees and are accordingly subject to ordinance No. 22026; and both are taxpayers of the city. The appellees will enforce ordinance No. 22026 against the appellants unless they are enjoined from doing so. Ordinance No. 22026 purports to add a new chapter to the Omaha municipal code entitled "Fair Employment Practices" which would, among other things, make it unlawful for an employer of three or more persons, except nonprofit social clubs, fraternal, charitable, educational, or religious associations or corporations from discriminating on the basis of race, religious creed, color, national origin, or ancestry.

All of the above matters were agreed to by the parties and appear in the statement of facts. It is also agreed in the statement of facts that the admissions and stipulations show that the city of Omaha expended public funds in the amount of $174.72 in advertising for an executive assistant to administer ordinance No. 22026; that the appellants are both subject to the provisions of ordinance No. 22026; and that the appellees would enforce the ordinance against the appellants.

The appellants' pertinent assignment of error is that the trial court erred in holding that the City of Omaha had the power to enact a fair employment practices ordinance, and particularly ordinance No. 22026 for the

following reasons: Such power has neither been expressly nor impliedly granted to the city by the Constitution or statutes of this state; and such fair employment practices and civil rights are matters of statewide concern and not of purely local concern and municipal governmental concern.

In Niklaus v. Miller, 159 Neb. 301, 66 N. W. 2d 824, this court said: "We have often held that: '* * * in this jurisdiction the law has long been settled beyond debate that a resident taxpayer, as such, and without proof of peculiar interest or injury to himself, may enjoin the illegal expenditure of money by a public board or officer.' Woodruff v. Welton, 70 Neb. 665, 97 N. W. 1037. See, also, Martin v. City of Lincoln, 155 Neb. 845, 53 N. W. 2d 923; * * *.

"These cases rest on the sound principle that each taxpayer has such an individual and common interest in public funds as to entitle him to maintain an action to prevent their unauthorized appropriation."

The City of Omaha expended public funds in the sum of $174.72 for the purpose of implementing the ordinance. A taxpayer may invoke the interposition of a court of equity to prevent the illegal expenditure of public money without showing any interest peculiar to himself.

As said in Best & Co., Inc. v. City of Omaha, 149 Neb. 868, 33 N. W. 2d 150: "A litigant, instead of resorting to an equitable remedy, is not obliged to take the risk of prosecution, fine, imprisonment, and loss of property in order to test the constitutionality of a city ordinance."

Under the above-cited authorities there is no doubt that the trial court and this court have jurisdiction of this matter.

Article XI, section 5, of the Constitution of this state provides: "The charter of any city having a population of more than one hundred thousand inhabitants may be adopted as the home rule charter of such city by a majority vote of the qualified electors of such city voting upon the question, and when so adopted may

thereafter be changed or amended as provided in Section 4 of this article, subject to the Constitution and laws of the state."

There is no question in this case with reference to the city of Omaha adopting its new charter in 1956.

There arises in this case the question of whether the city charter of the city of Omaha is a grant of power or a limitation of power. The appellants contend that a grant of power exists, while the appellees contend that a limitation of power exists.

In Hanson v. City of Omaha, 157 Neb. 403, 59 N. W. 2d 622, supplemental opinion, 157 Neb. 768, 61 N. W. 2d 556, this court said in the original opinion, quoting with approval from Wagner v. City of Omaha, 156 Neb. 163, 55 N. W. 2d 490: " 'The power conferred upon municipal corporations by their charters to enact ordinances on specified subjects is to be construed strictly, and the exercise of the power must be confined within the general principles of the law applicable to such subjects.' See, also, Reid v. City of Omaha, 150 Neb. 286, 34 N. W. 2d 375; Interstate Power Co. v. City of Ainsworth, 125 Neb. 419, 250 N. W. 649.

"The home rule charter adopted by the city of Omaha is a grant as distinguished from a limitation of power. Being a grant of power the charter is to be contrued according to the same rules as a legislative act containing the same provisions in determining what authority is thereby granted the city government. See, Consumers Coal Co. v. City of Lincoln, 109 Neb. 51, 189 N. W. 643; Falldorf v. City of Grand Island, 138 Neb. 212, 292 N. W. 598; * * *.

"A municipal corporation is a creature of the law established for special purposes, and its corporate acts must be authorized by its charter and other acts applicable thereto. It therefore possesses no power or faculties not conferred upon it, either expressly or by fair implication, by the laws which created it or by

other laws, constitutional or statutory, applicable to it. Wagner v. City of Omaha, *supra.*"

In Peterson v. Vasak, 162 Neb. 498, 76 N. W. 2d 420, this court said: "A city is a political subdivision of the state, created as a convenient agency for the exercise of such governmental powers of the state as may be entrusted to it by constitutional provision or legislative act. Interstate Power Co. v. City of Ainsworth, 125 Neb. 419, 250 N. W. 649; Hanson v. City of Omaha, 157 Neb. 403, 59 N. W. 2d 622, supplemental opinion, 157 Neb. 768, 61 N. W. 2d 556; State v. Kubik, 159 Neb. 509, 67 N. W. 2d 755. * * * The governmental authority known as the police power is inherently an attribute of state sovereignty and belongs to subordinate governmental divisions when and as conferred by the state either through its Constitution or by valid legislation. Pettis v. Alpha Alpha Chapter of Phi Beta Pi, 115 Neb. 525, 213 N. W. 835; City of Omaha v. Glissmann, 151 Neb. 895, 39 N. W. 2d 828; * * * Annotations, 86 A. L. R. 659, 117 A. L. R. 1117; * * *."

In Philson v. City of Omaha, 167 Neb. 360, 93 N. W. 2d 13, which was decided after the home rule charter of 1956 was adopted, this court said: "The city of Omaha is a city of the metropolitan class operating under a home rule charter. A home rule charter is a grant of power to a city as distinguished from a limitation of general power. The grant of power is to be construed strictly in favor of the public and against the public officials of the charter city. Where the charter specifies a method of exercise of a power, such method constitutes the measure of the power. A city council cannot, therefore, extend its powers by the enactment of an ordinance beyond the limits prescribed in its charter. Manners v. City of Wahoo, 153 Neb. 437, 45 N. W. 2d 113; Wagner v. City of Omaha, 156 Neb. 163, 55 N. W. 2d 490."

As stated in 7 McQuillin, Municipal Corporations (3d ed.), § 24.430, p. 383: "While a municipality must ob-

serve and itself not violate constitutional or statutory guaranties of equality of civil rights irrespective of race or social condition, insofar as these guaranties bind municipal governments, a municipal corporation ordinarily is without power to legislate upon, or extend, equality of civil rights." Section 24.431, p. 383, provides in part: "Employer-employee relationships for the most part are subject to state rather than municipal regulation; * * *."

Some argument appears in the appellees' brief, citing Consumers Coal Co. v. City of Lincoln, 109 Neb. 51, 189 N. W. 643, that the 1956 home rule charter of the city of Omaha is not a grant of power by the electorate of the city, but is a limitation of the power of the city council only, therefore the city has the power to pass any ordinance unless the charter specifically prohibits it, and the rules heretofore announced do not apply.

It is significant that the case of Philson v. City of Omaha, *supra*, was decided subsequent to the effective date of the 1956 charter of the city of Omaha, and declared the home rule charter of the city of Omaha to be a grant of power. Our research discloses that this court has declared city charters to be a grant of power. We are unable to find any case in this jurisdiction holding that a city charter is a limitation of power of the city council only.

From an examination of the city charter of the city of Omaha, we are unable to find any express authority which granted the city council power to pass legislation pertaining to fair employment practices or civil rights. Neither does the city charter fairly imply that the city council is vested with the power to pass such an ordinance. There is no grant of such power to the city by any law passed by the Legislature, nor any existing statutory law or constitutional right granted to the city of Omaha applicable to the city's right to warrant the passage of the ordinance here considered. It is apparent that the city council of the city of Omaha, in passing

the ordinance in question, exceeded its power. The matters of fair employment practices and civil rights are matters of statewide and not of local concern. The city of Omaha, when its charter was adopted in 1956, never acquired any power delegated to it by the Legislature to pass an ordinance relating to fair employment practices or civil rights.

Chapter 48, R. R. S. 1943, entitled "Labor," discloses that the state by its Legislature has extensively entered the field of labor. Article 1 relates to workmen's compensation; article 2, to employment regulations; article 3, to child labor; article 4, to health and safety regulations; article 5, to employment agencies; article 6, to employment security; and other articles relate to the subject of labor but need not be set forth.

Section 81-101, R. R. S. 1943, creates the Department of Labor. Section 81-102, R. R. S. 1943, relates to the appointment of a Commissioner of Labor for the Department of Labor. Section 81-401, R. R. S. 1943, sets out various duties of the Department of Labor among which are to foster, promote, and develop the welfare of wage earners; to improve working conditions; and to advance opportunities for profitable employment.

Section 20-101, R. R. S. 1943, provides: "All persons within this state shall be entitled to a full and equal enjoyment of the accommodations, advantages, facilities and privileges of inns, restaurants, public conveyances, barber shops, theatres and other places of amusement, subject only to the conditions and limitations established by law and applicable alike to every person."

Section 48-214, R. R. S. 1943, provides in part: "It is hereby declared to be the policy of this state that no representative agency of labor, in collective bargaining with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or other conditions of work, shall, in such collective bargaining, discriminate against any person because of his race or color. The Department of Labor shall be and hereby is charged

with the duty of enforcement of this policy in conformity with Article I of the Constitution of Nebraska * * *."

Section 48-215, R. R. S. 1943, prohibits racial discrimination by firms producing or distributing military or naval supplies.

From the above cited, it is obvious that the Department of Labor, created by the Legislature of this state, is vested with the power and responsibility of enforcing employment regulations within the state.

On three occasions the Legislature of this state has refused to pass fair employment practices legislation. See, Legislative Journal, Sixty-ninth Session, 1959, pp. 26 and 1363; Legislative Journal, Seventy-second Session, 1961, pp. 323 and 1522; Legislative Journal, Seventy-third Session, 1963, pp. 197 and 2017. This action by the Legislature is tantamount to a declaration by it that, although it controls labor-management relations and employment relations, it does not, at least to the the present time, desire to legislate with respect to discrimination because of race, creed, or color in private employment.

As shown by the above, the state, by its Legislature, legislated specifically in the field of fair employment practices.

Legislative bill No. 724, of the 1963 Legislature, was an act relating to labor; to prohibit unjust discrimination in employment because of age; to provide for penalties; and to provide for enforcement of the act. This bill was approved by the Governor on July 5, 1963. §§ 48-1001 to 48-1006, R. S. Supp., 1963.

From the above it is apparent that the state, through its Legislature, has entered the field relating to labor relations and practices, and civil rights, and has not delegated to the city of Omaha any power to legislate by its city council the aforesaid matters.

This court in several opinions has stated that when the Legislature has enacted a law affecting municipal affairs, but which are also of statewide concern, such

law takes precedence over any provisions in a home rule charter and the provisions of the charter must yield. See, Axberg v. City of Lincoln, 141 Neb. 55, 2 N. W. 2d 613, 141 A. L. R. 894; Nagle v. City of Grand Island, 144 Neb. 67, 12 N. W. 2d 540; Michelson v. City of Grand Island, 154 Neb. 654, 48 N. W. 2d 769, 26 A. L. R. 2d 1346.

The appellees cross-appealed, assigning as error that the trial court erred in holding that the definition of "employer" contained in ordinance No. 22026 violated Article I, section 3, or Article III, section 18, if not both, of the Constitution of this state.

We have heretofore set forth the court's ruling in this respect. We find such ruling to be correct and this matter need not be further discussed. The appellees' cross-appeal is denied.

We hold ordinance No. 22026 of the city of Omaha to be unconstitutional in its entirety for the reason that the state, through the Legislature, did not delegate to the city of Omaha the power to permit its city council to legislate on fair employment practices and civil rights by passing ordinance No. 22026; and for the further reason that the power relating to labor relations and practices, and civil rights, lies in the state, and such matters are of statewide concern and not of local concern nor municipal government concern.

Other matters are raised with reference to the constitutionality of the ordinance in question which need not be determined in the light of our holding.

The judgment of the trial court should be and is reversed and the cause remanded to the trial court with directions to render judgment in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.