H. F. JACOBBERGER, APPELLANT, V. LEE TERRY, DOUGLAS COUNTY ELECTION COMMISSIONER, APPELLEE.

320 N.W.2d 903

Filed June 18, 1982. No. 44068.

R. A. Skochdopole and William R. Johnson of Kennedy, Holland, DeLacy & Svoboda, for appellant.

Donald L. Knowles, Douglas County Attorney, and Daniel G. Crouchley and John Q. Powers, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.

This is an action brought by the plaintiff Jacobberger pursuant to the Nebraska Uniform Declaratory Judgments Act, seeking a determination of the constitutionality of Neb. Rev. Stat. §§ 14-201 et seq. (Cum. Supp. 1980) (hereinafter referred to as L.B. 329). The District Court found that the provisions of L.B. 329 were not violative of the Constitution of the State of Nebraska, and dismissed the action. Jacobberger has appealed, assigning as error that the subject matter of L.B. 329 addresses a matter of local concern and that its provisions directly conflict with the city of Omaha's home rule charter, contrary to Neb. Const. art. XI, § 5. He further contends that L.B. 329 is violative of Neb. Const. art. III, § 18, the prohibition against local and special legislation, and that the District Court erred in concluding that L.B. 329 limited the forms of government available to metropolitan class cities. We affirm.

The city of Omaha is a city of the metropolitan class and is governed by a home rule charter which

was adopted pursuant to article XI, § 5. This constitutional provision permits the electors of a city whose population exceeds 100,000 to adopt a home rule charter by a majority vote of the electors of that city. Omaha's current charter was adopted in 1956, and the portion pertinent to the present action provides that "The Council shall be composed of seven members who shall be known as Councilmen. All seven Councilmen *shall be elected by the people on an at large, non-partisan basis* and shall serve for a term of four years." (Emphasis supplied.) § 2.01. Three subsequent attempts to alter this provision by amendments which would have allowed some form of representation and voting by district, as opposed to an at-large basis, failed when put to a vote of the electors.

In 1979 Senator Chambers introduced L.B. 329, which was adopted by the Legislature and codified as §§ 14-201 et seq. The pertinent portion thereof provides: "The election commissioner in any county in which is situated a city of the metropolitan class shall divide the city into seven city council districts of compact and contiguous territory. Such districts shall be numbered consecutively from one to seven. *One council member shall be elected from each such district.*" (Emphasis supplied.) § 14-201.03.

The defendant Terry, as the election commissioner of Douglas County, and his predecessor in office, acted pursuant to the mandate in L.B. 329 and divided the city of Omaha into seven city council districts. While an election had not been held at the time this suit was commenced, we note that during the pendency of this appeal both a primary and general election were held in 1981, and a new city council has been elected from the newly formed districts.

Jacobberger filed this action as a citizen, taxpayer, and registered voter of the city of Omaha, seeking a temporary and permanent injunction

against the implementation of L.B. 329 as well as a determination of its constitutional validity. As noted above, the trial court dismissed the action and Jacobberger perfected this appeal.

On appeal the appellee has raised the question of whether the appellant is guilty of laches and is thereby estopped from bringing this action. We need only note that this defense was not raised in the original answer filed in this action, but was raised in an amended answer which was filed 2 days after the date appearing on the order dismissing the action. Although the trial court considered laches as a defense against the granting of a temporary injunction, it is apparent from the order rendered by the court that the defense was not considered on the merits of Jacobberger's request for a declaratory judgment. It is axiomatic that a defense not raised by a party until after the issuance of an order dismissing the petition brought against the defendant neither raises nor preserves a defense for consideration by this court. Therefore, it is appropriate for us to proceed to a discussion of the assignments of error raised by Jacobberger on appeal.

The first assignment of error raises the question of whether the subject matter of L.B. 329 is a matter of local or state concern. This issue arises out of the constitutional limitation requiring a home rule charter to be "subject to the Constitution and laws of the state." Art. XI, § 5. "This has been construed to mean that a provision of a home rule charter takes precedence over a conflicting state statute in instances of local municipal concern, but when the Legislature enacts a law affecting municipal affairs which is of state-wide concern, the state law takes precedence over any municipal action taken under the home rule charter." *Omaha Parking Authority v. City of Omaha,* 163 Neb. 97, 104, 77 N.W.2d 862, 868 (1956).

When analyzing an issue of this nature one is re-

quired to determine the "concern" of the legislative act prior to determining whether that "concern" is statewide or local. It is obvious from the legislative history of L.B. 329 and from the express language of the statute itself that the "concern" of the bill was to insure adequate and equal representation to all socioeconomic segments of the populations of cities of the metropolitan class. The statute itself declares in part: "The Legislature finds and declares that the election of the city council at large in cities of the metropolitan class denies representation to some socioeconomic segments of the population." § 14-201.02. Furthermore, at several points, Senator Chambers, the bill's introducer, noted that the purpose of L.B. 329 was to insure "proper proportionate representation." Public Hearing, Committee on Government, Military & Veterans Affairs, 86th Leg., 1st Sess. 7 (March 9, 1979). The Legislature then dealt with this "concern" over disproportionate representation in cities of the metropolitan class by requiring the election of council members by district instead of on an at-large basis. Therefore, although L.B. 329 did alter the method of electing city council members in metropolitan class cities, the Legislature's true concern in enacting L.B. 329 was its fear that certain socioeconomic classes were being deprived of representation by elections on an at-large basis. The question then becomes whether this concern for proportionate representation is a matter of local or statewide concern.

We note in passing that the Legislature foresaw this problem and attempted to remedy the situation by declaring in part: "The Legislature further finds and declares that fair and adequate representation of all areas and all socioeconomic segments of the population of cities of the metropolitan class is a matter of general statewide concern, the provisions of any home rule charter notwithstanding." § 14-201.02. However, as we have noted on numerous

occasions, "Whether or not an act of the legislature pertains to a matter of local or state-wide concern becomes a question for the courts when a conflict of authority arises." *Axberg v. City of Lincoln,* 141 Neb. 55, 58, 2 N.W.2d 613, 615 (1942). We are not bound by the Legislature's declaration on this matter.

Although we have addressed this issue on numerous occasions, never have we attempted to formulate a definition of either local or statewide concern. Indeed, we have noted that "The Constitution does not define which laws relate to matters of strictly municipal concern and which to state affairs. There is no sure test which will enable us to distinguish between matters of strictly municipal concern and those of state concern. The court must consider each case as it arises and draw the line of demarcation." *Carlberg v. Metcalf,* 120 Neb. 481, 487, 234 N.W. 87, 90 (1930). While some jurisdictions have attempted to define one or the other category, the circuitous nature of these attempted definitions leads us to conclude that the better course remains one of a case-by-case analysis of the issue as it arises. See 2 McQuillin, Municipal Corporations § 4.85 (3d ed. rev. 1979).

In this instance, as we have noted, we are dealing with an act of the Legislature whose primary concern was to insure proportionate representation to every socioeconomic segment of the population of a metropolitan class city. When confronted with an attack on a state legislative apportionment scheme and its potential impairment of the constitutionally protected right to vote, the U. S. Supreme Court noted that such a case, with regard to the right of suffrage, " 'touches a sensitive and important area of human rights,' and 'involves one of the basic civil rights of man,' . . . . Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society." *Reynolds v. Sims,* 377 U.S. 533,

561-62, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964). Consequently, we must consider this case as one in which the Legislature acted in the interest of protecting a fundamental human and civil right.

In *Midwest Employers Council, Inc. v. City of Omaha,* 177 Neb. 877, 131 N.W.2d 609 (1964), this court was confronted with a challenge of an Omaha ordinance which attempted to regulate the employment practices in private businesses in Omaha. The plaintiff challenged the ordinance on the basis that the city was without the power under its home rule charter to legislate in the field of fair employment practices and civil rights due to the fact that these areas were matters of statewide concern. After pointing out the general rule concerning conflicting provisions of home rule charters and state statutes, we found the ordinance "to be unconstitutional in its entirety for the reason that the state, through the Legislature, did not delegate to the city of Omaha the power to permit its city council to legislate on fair employment practices and civil rights by passing ordinance No. 22026; and for the further reason that the power relating to labor relations and practices, and *civil rights, lies in the state, and such matters are of statewide concern and not of local concern nor municipal government concern."* (Emphasis supplied.) *Id.* at 888, 131 N.W.2d at 616.

Similarly, we find in this instance that the Legislature's actions to protect the fundamental civil rights of suffrage and proportionate representation are also of statewide concern as opposed to local concern. Consequently, the provisions of L.B. 329 supersede the provisions of § 2.01 of the Omaha home rule charter and do not violate article XI, § 5.

The appellant places heavy reliance on *State ex rel. Fischer v. City of Lincoln,* 137 Neb. 97, 288 N.W. 499 (1939), wherein we noted that "In adopting a home rule charter, however, the city had the right to make provision therein for any form of local govern-

ment it desired, which was not in conflict with the letter and spirit of our Constitution. Its right to adopt a particular form of government was in no way dependent upon whether the legislature, by statutory enactment, had authorized such a form, nor was it subject to the statutory conditions and limitations upon which the legislature had authorized a city to adopt it." *Id.* at 103, 288 N.W. at 502. We note, however, that this case involved a conflict between an ordinance of the city of Lincoln and a state statute that by its terms was only applicable to cities operating under the commission form of government. Therefore, when we spoke of a city's right to "adopt a particular form of government," it was with reference to the adoption of a commission form of government as opposed to a mayor-city council form of government. Such language should not be taken to mean that a home rule charter city has the authority to control its citizens' right to vote and entitlement to proportionate representation.

A similar distinction can be drawn between the present action and those cases from other jurisdictions cited by the appellant. *State ex rel. v. Edmonds,* 150 Ohio St. 203, 80 N.E.2d 769 (1948); *State ex rel. v. Callahan,* 96 Okla. 276, 221 P. 718 (1923); *Triano v. Massion,* 109 Ariz. 506, 513 P.2d 935 (1973); *Strode v. Sullivan,* 72 Ariz. 360, 236 P.2d 48 (1951). These cases involved the manner in which local elections were to be conducted and reached the conclusion that such a matter was of local concern only. As noted earlier, while the action of the Nebraska Legislature in this instance directly affects the manner by which a metropolitan city selects its city council, the primary concern of the legislation was to insure the fundamental right to vote and the right to proportionate representation. Such matters are not of local concern alone and go well beyond the manner in which an election is conducted. Conse-

quently, the appellant's first assignment of error is without merit.

Appellant next contends that L.B. 329 is special or local legislation in violation of article III, § 18. This claim is based upon the fact that Neb. Rev. Stat. §§ 19-401 to 19-434 (Reissue 1977 and Cum. Supp. 1980) permits a city of 2,000 population or over to adopt a commission form of government and expressly requires such cities to elect their city councils "not by or from wards or districts, but at large." § 19-404 (Cum. Supp. 1980). Currently, as the parties concede, Omaha is the only city in Nebraska having the necessary population in excess of 300,000 inhabitants to qualify as a city of the metropolitan class. Neb. Rev. Stat. § 14-101 (Reissue 1977). However, because the Legislature may not create a "closed class" by leaving no room or opportunity for an increase in the members of the class by future growth or development, we must anticipate the possibility of an additional city qualifying as a metropolitan class city. *State ex rel. Douglas v. Marsh,* 207 Neb. 598, 300 N.W.2d 181 (1980); *City of Scottsbluff v. Tiemann,* 185 Neb. 256, 175 N.W.2d 74 (1970). Such a city may very well attain that status under a commission form of government. It is that possibility that leads the appellant to claim that the requirement of district elections contained in L.B. 329 will not operate uniformly on all metropolitan class cities in light of the provision in § 19-404 for at-large elections in cities governed by a commission, and that, therefore, L.B. 329 is special and local legislation in violation of article III, § 18.

However, we do not believe that L.B. 329 has created an unreasonable and arbitrary classification in violation of article III, § 18. " 'It is competent for the Legislature to classify objects of legislation and if the classification is reasonable and not arbitrary, it is a legitimate exercise of legislative power. . . . The power of classification rests with the Legisla-

ture and cannot be interfered with by the courts unless it is clearly apparent that the Legislature has by artificial and baseless classification attempted to evade and violate provisions of the Constitution prohibiting local and special legislation. . . . A legislative classification, in order to be valid, must be based upon some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified. *Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference.'* . . . 'Classification is proper if the special class has some reasonable distinction from other subjects of a, like general character, which distinction bears some reasonable relation to the legitimate objectives and purposes of the legislation. The question is always whether the things or persons classified by the act form by themselves a proper and legitimate class with reference to the purpose of the act.' " (Emphasis in original.) *State ex rel. Douglas v. Marsh, supra* at 608-09, 300 N.W.2d at 187. The question becomes whether a metropolitan class city under any form of government other than the commission form amounts to "a proper and legitimate class with reference to the purpose of the act."

We conclude that a reasonable distinction does exist between metropolitan class cities under the commission form of government and all other metropolitan class cities, and that, therefore, L.B. 329 is not special or local legislation violative of article III, § 18. This distinction lies in the fact that the executive and administrative powers and duties of a metropolitan class city governed by a commission are divided into seven different departments, such as the department of accounts and finances, department of police, sanitation, and public safety, department of fire protection and water supply, and the

department of public improvements. § 19-414 (Cum. Supp. 1980). In turn, city council members shall be appointed as superintendents of the various departments. § 19-415 (Cum. Supp. 1980). The problems inherent in imposing the representation of the constituents of a district upon council members who must also concern themselves with the equitable administration of a department for the benefit of the entire city is readily apparent. The potential for one portion of the city whose council member is the superintendent of the department of public improvements to enjoy greater benefits from that department provides sufficient reason for the imposition of at-large elections upon those cities electing to adopt the commission form of government. It also provides a reasonable distinction from all other forms of city government.

It is evident from the Legislature's actions in 1979 that it foresaw this distinction and the potential problems arising therefrom. Prior to 1979, the mayor-city council and the commission forms of government were structured in much the same manner. In a mayor-city council structure the various city council members were designated as superintendents of the various departments, and each was elected on an at-large basis. §§ 14-217 and 14-201 (Reissue 1977). However, with the passage of L.B. 329, the Legislature not only instituted elections by district, they also repealed the provisions of § 14-217 calling for the designation of a council member as superintendent of a city department. By doing so, the Legislature removed any potential conflict that might arise between a council member's duty as administrator of a city department and his duty to his respective constituency.

For the foregoing reason, we conclude that the Legislature had a reasonable basis for distinguishing between the commission form of city government and all other forms of city government for

metropolitan class cities and the manner of elections it has provided for each. The appellant's second assignment of error is also without merit.

The appellant raises the following sentence from the trial court's order as the basis for the final assignment of error: "That LB 329 requires any city of the metropolitan class to have a city-council form of government and to elect its council members by district." It was upon this reasoning that the trial court based its conclusion that L.B. 329 did not violate article III, § 18.

It is clear from the provisions of L.B. 329 and §§ 19-401 et seq. that both are applicable to cities of the metropolitan class. In that respect, the trial court's order appears to be in error. However, "It is a familiar principle that a proper judgment will not be reversed because the trial court gave an erroneous reason for its rendition." *Strauss v. Square D Co.,* 201 Neb. 571, 576, 270 N.W.2d 917, 920 (1978). We have also stated in the past that "Where a correct judgment or order has been made, the mere fact that it contains erroneous declarations of law does not require reversal." *Lux v. Mental Health Board of Polk County,* 202 Neb. 106, 110, 274 N.W.2d 141, 144-45 (1979). While the trial court may have misstated the scope of L.B. 329, its conclusion regarding the law's validity under article III, § 18, was, as we noted above, correct. Consequently, its decision will not be overturned on this basis.

We conclude that the concern for proportionate representation expressed by the Legislature in L.B. 329 is a matter of statewide concern. Therefore, the provisions of that act which pertain to the election of metropolitan class cities' council members by district are paramount to the conflicting provisions of the Omaha home rule charter. Further, the provision contained in L.B. 329 for district elections is not special or local legislation in violation of article III, § 18. A reasonable distinction exists between the

commission form of government, which is allowed to conduct at-large elections, and all other forms of government available to metropolitan class cities. Finally, we will not overturn what we find to be a correct finding by the trial court in spite of what appears to be a misstatement of the law in the court's order. For these reasons, we affirm the District Court's decision and uphold the validity of L.B. 329.

AFFIRMED.

CLINTON, J., concurring in the result.

It would appear upon initial consideration that whether a city having a home rule charter elects the members of its legislative body at large or by district is, just as a matter of common sense, one for the citizens of the community to decide. However, an examination of the decisions of this court applying Neb. Const. art. XI, §§ 2 through 5, discloses no formulation of any general principle by which one may determine whether any particular matter is of statewide or merely of local concern. Indeed, some of the decisions are impossible to reconcile on any rational basis. That examination further discloses that home rule charter provisions of the Constitution of Nebraska have, by decisions of this court, been gradually eroded until, except for the most insignificant matters, the home rule charter provisions are of no practical import except as a source of litigation.

The majority opinion adds further confusion to the subject by its lengthy discussion of deprivation of the right of suffrage. The Omaha home rule charter does not deprive anyone of the right of suffrage. L.B. 329 should be recognized for what it is, namely, a determination by the Legislature that in the city of Omaha a racial minority, most of whom live in one neighborhood, are entitled to representation on the local governing body. L.B. 329 is clearly designed as a specific remedy to a "local" problem.

Sections 2 through 5 of article XI of the Nebraska

Constitution have slowly been dying as the judicial hatchet has chopped away the life support system. I think our opinion today "pulls the plug." I make these separate comments in order that the demise not pass unnoticed and so that if there exists any particular interest in continuing significant home rule it can be done by a constitutional provision which somewhat precisely defines the appropriate areas of home rule rather than providing that it be "consistent with the laws of this state." The latter phrase simply does not tell the court whether the charter provisions of the Constitution prevail unless preempted by legislative act or whether the Constitution makers intended to make some sort of distinction between matters of statewide interest and those of merely local interest, as this court has held, but which distinction it has been unable to define.

There is adequate precedent for this court's decision. In *State ex rel. City of Grand Island v. Johnson,* 175 Neb. 498, 122 N.W.2d 240 (1963), we held that the percentage of votes required to issue general obligation bonds was a matter of statewide concern and the state statute requiring 60 percent approval prevailed over the charter provision requiring only majority approval. In *McMaster v. Wilkinson,* 145 Neb. 39, 15 N.W.2d 348 (1944), we held that an election contest involving the office of city councilman was governed not by charter provisions on the subject but by state statute. These cases seem to hold that matters pertaining to local elections are of statewide concern.