HAROLD HALL, APPELLANT AND CROSS-APPELLEE, V. COX CABLE OF OMAHA, INC., A NEBRASKA CORPORATION, ET AL., APPELLEES AND CROSS-APPELLANTS.

327 N.W.2d 595

Filed December 3, 1982. No. 44417.

Larry W. Myers, J. Patrick Green, Wallace Rudolph, and Robert C. Guinan of Guinan & Kolenda, for appellant.

Herbert M. Fitle, City Attorney, and Timothy M. Kenny, for appellee City of Omaha.

Abrahams, Kaslow & Cassman, and Dow, Lohnes & Albertson, for appellee Cox Cable.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

The appellant, Harold Hall, commenced this action in the District Court for Douglas County, Nebraska, seeking declaratory relief pursuant to Neb. Rev. Stat. §§ 25-21,149 to 25-21,164 (Reissue 1979). The appellees, Cox Cable of Omaha, Inc. (Cox Cable), a Nebraska corporation granted a cable franchise by the City of Omaha, the City of Omaha, its mayor, and certain members of its city council, each filed a demurrer to Hall's second amended pe-

tition (petition). Appellees Green and Hassett, members of the Omaha City Council, filed separate answers, generally admitting all of the allegations of Hall's petition.

On May 28, 1981, the trial court sustained the demurrers of the appellees Cox Cable and the City of Omaha and dismissed the petition. Having now reviewed the files in this case, we are of the opinion that the trial court was correct in sustaining the demurrers and dismissing the petition and, accordingly, affirm the judgment of the trial court.

Because this case was disposed of by the trial court on demurrers there is, of course, no evidence before this court. All that we have before us is the 22-page petition filed by Hall and the demurrers filed by Cox Cable and the City of Omaha.

We recognize that because the case below was decided on a demurrer we are required, in reviewing this case, to consider all proper allegations of *fact* as true. *Paasch v. Brown,* 193 Neb. 368, 227 N.W.2d 402 (1975); *Hester v. Young,* 154 Neb. 227, 47 N.W.2d 515 (1951). By the same token, however, only allegations of *fact* are to be so considered and the mere *conclusions* of the pleader are insufficient and are not admitted by the demurrer. A general demurrer admits only such facts as are well pleaded and does not admit mere conclusions of the pleader. See, *Retail Section of Chamber of Commerce of Plattsmouth v. Kieck,* 128 Neb. 13, 257 N.W. 493 (1934); *Salsbury v. City of Lincoln,* 117 Neb. 465, 220 N.W. 827 (1928). As we noted in *Timmerman v. Hertz,* 195 Neb. 237, 244-45, 238 N.W.2d 220, 225 (1976): "The pleading of legal conclusions is insufficient to raise an issue of fact."

Much of the 22 pages of Hall's petition is nothing more than unsupported conclusions and only tends to confuse the issues presented. The petition alleges as follows: Hall is a resident of the City of Omaha, the owner of a television set, desirous of obtaining

the services of cable television, and a legally quali-
fied elector of the City of Omaha entitled to vote in
any municipal election in Omaha. After then al-
leging that this is a proper class action under Neb.
Rev. Stat. § 25-319 (Reissue 1979) and is an action
brought pursuant to the Uniform Declaratory Judg-
ments Act, §§ 25-21,149 to 25-21,164, Hall identifies
the various appellees, who are the City of Omaha, its
mayor, and the members of the city council, as well
as a private corporation duly organized under the
laws of the State of Nebraska with its principal place
of business in Omaha, Nebraska. The petition then
alleges that Cox Cable is comprised of 80 percent
ownership by Cox Cable Communications, Inc., of
Atlanta, Georgia, and 20 percent divided among
various residents of the Omaha area.

Further, the petition alleges facts concerning a
contact made by one of the present stockholders of
Cox Cable with Cox Cable of Atlanta. The petition
alleges that the purpose of the contact was to inter-
est Cox Cable of Atlanta in seeking a cable franchise
in the City of Omaha; that as a result of the contact
a preincorporation agreement for Cox Cable was ex-
ecuted by the Atlanta parent corporation and seven
of the local shareholders. A copy of the agreement
is attached to the petition and generally provides,
among other matters, that after a period of 5 years
from the City of Omaha's award of a cable franchise
to Cox Cable, each of the local shareholders has the
right to sell his or her shares of stock to Cox Cable of
Atlanta in accordance with certain formulas set out
in the agreement. The petition then, through a
series of conclusions, alleges that the stockholders
are not suited to be stockholders of a cable television
corporation and have been obtained solely for the
purpose of influencing the city council in granting
the franchise. It is significant to note at this point
that there are no allegations of *fact* in the petition of

any wrongdoing by either the City of Omaha or any of its officials.

The petition then alleges, by way of conclusion, that Neb. Rev. Stat. § 18-2202 (Reissue 1977), concerning community antenna television service (CATV), was amended in 1979 to eliminate the requirement of local voter approval for the granting of a CATV franchise, and substituted in place of voter approval the right of the city council and the mayor to approve such franchise. The petition then details the action taken by the city council in seeking bids by interested cable television concerns pursuant to a cable ordinance previously adopted by the city council, a copy of which was attached to the petition. The petition further alleges that contrary to a "no lobby rule" adopted by the city council in connection with the cable franchise, certain city council members "did in fact receive direct and indirect contacts, favors and services from representatives of Cox Cable of Omaha; that the receipt by said Council members of such contacts, favors and services rendered it impossible for them to make an impartial decision on the merits regarding the award of a CATV franchise for Omaha." The petition alleges no facts regarding which members of the council were so affected, whether any of them responded to the contacts, or whether any acted in reliance of the contacts. This is but a sample of the manner in which the petition is generally conclusory in nature and therefore defective.

The petition further alleges that in violation of specific requirements in the city's request for proposals for CATV, the proposal of Cox Cable failed to attach certain documents and failed to fully disclose certain requested information, principally concerning the preincorporation agreement earlier executed by Cox Cable of Atlanta and the Omaha resident stockholders. The petition further alleges that Cox Cable made representations to the city with regard to the

existence of a system which it calls "Indax" when in fact the system did not exist in any community in operable form. The petition then alleges that on August 19, 1980, the city council of Omaha passed and adopted ordinance No. 29254 granting to Cox Cable a nonexclusive CATV franchise which was thereafter signed by the mayor on behalf of the city. Under the ordinance, pursuant to Neb. Rev. Stat. § 18-2204 (Reissue 1977), the city is to receive a franchise fee of 5 percent of the revenues collected by Cox Cable.

The petition then, in conclusory form, alleges that ratepayers have a constitutional right to rates which are just and reasonable and that the franchise award process and resulting agreement used by the City of Omaha in awarding the franchise to Cox Cable was totally invalid in violation of those constitutional rights. The petition further alleges that the awarding of the franchise was invalid because the voters of the City of Omaha were not permitted to pass on the franchise, notwithstanding the fact that both a state statute and a provision of the charter require a public vote, and for the further reason that the rates approved by the city council in the initial franchise agreement contained improper factors which should not be included in a rate base.

The prayer of the petition then asks that the court find and determine that the entire franchise award process and resulting agreement is void because of the "inherent conflict of interest of the City of Omaha," or, in the alternative, the City of Omaha's 5 percent franchise fee awarded under the agreement and provided for by statute be held invalid and unenforceable. Further, the prayer asks the court to permanently enjoin the City of Omaha from collecting any moneys under the fee provision and that the initial rates set forth in the franchise agreement be reduced by at least 5 percent to reflect the "invalidity of the City of Omaha's franchise fee." The prayer further asks the court to order that the initial

rates of Cox Cable be reduced by at least 20 percent "to purge them of the effect of the unlawful transaction and the unlawful consideration paid to the Local Shareholders which is reflected in the rate base," or, in the alternative, "that the Court order that such rates be recomputed in a manner that assures that the level of such rates will in no manner be based upon or impacted by the existence of such shares of stock, and that Cox Cable of Omaha be enjoined in the future from charging any rate which is based upon or reflects the existence of such outstanding shares or payment of the unlawful consideration to the Local Shareholders."

At the outset we are presented with determining whether Hall has standing to bring this action as either (1) "a resident," (2) "the owner of a television set," or (3) "an elector." Hall does not allege that he is a ratepayer, although throughout his brief he relies upon the rights of a ratepayer. We do not believe that a prospective ratepayer is the same as a ratepayer in this type of case.

Hall's claim of standing as an elector is based upon his claim that Neb. Rev. Stat. §§ 18-2201 et seq. (Reissue 1977), and in particular § 18-2202, are invalid in that cable television is not a matter of statewide concern, and both the Omaha city charter, providing that a franchise may not be awarded until voted upon by the voters of the City of Omaha (see § 11 of the home rule charter of the City of Omaha), and Neb. Rev. Stat. § 14-811 (Reissue 1977), which provides in part that a new franchise may not be granted or an existing franchise extended unless an annuity or royalty be provided and reserved to the city and then only after the same has been submitted to a vote and approved by the electors in a general city election or special election called for that purpose, take precedence over the provisions of §§ 18-2201 et seq. Hall's contention in this regard fails for at least two reasons. It is clear that § 18-2204

is a special statute concerning an occupation tax to be collected by the City of Omaha in connection with CATV service only, while § 14-811 is a general statute regarding franchises and the levying of an annuity or royalty generally. That is to say, § 18-2204 is a special statute while § 14-811 is a general statute. The effect of that difference is significant. In *Kibbon v. School Dist. of Omaha,* 196 Neb. 293, 298-99, 242 N.W.2d 634, 637 (1976), we repeated the oft-cited rule regarding special statutes and general statutes, saying: "It is a well-established rule that special provisions of a statute in regard to a particular subject will prevail over general provisions in the same or other statutes so far as there is a conflict. Houser v. School Dist. of South Sioux City, 189 Neb. 323, 202 N.W.2d 621. Where general and special provisions of statutes are in conflict, the general law yields to the special, without regard to priority of dates in enacting the same, and a special law will not be repealed by general provisions unless by express words or necessary implication. Bass v. County of Saline, 171 Neb. 538, 106 N.W.2d 860." Section 14-811 must yield to the provisions of § 18-2204 regarding CATV, and the city's failure to submit the matter under the provisions of § 14-811 to a vote of the electors of the City of Omaha was not a defect in that such submission was not required.

Further, the rules concerning matters of statewide concern enacted by statute, when in conflict with provisions of home rule charters, are likewise clear and applicable to this case. In the recent case of *Jacobberger v. Terry,* 211 Neb. 878, 881, 320 N.W.2d 903, 905 (1982), we said: " '[A] provision of a home rule charter takes precedence over a conflicting state statute in instances of local municipal concern, but when the Legislature enacts a law affecting municipal affairs which is of state-wide concern, the state law takes precedence over any municipal action taken under the home rule charter.' *Omaha*

*Parking Authority v. City of Omaha,* 163 Neb. 97, 104, 77 N.W.2d 862, 868 (1956)." In the *Jacobberger* case we further noted: " 'Whether or not an act of the legislature pertains to a matter of local or state-wide concern becomes a question for the courts when a conflict of authority arises.' . . . 'The Constitution does not define which laws relate to matters of strictly municipal concern and which to state affairs. There is no sure test which will enable us to distinguish between matters of strictly municipal concern and those of state concern. The court must consider each case as it arises and draw the line of demarcation.' " *Id.* at 883, 320 N.W.2d at 906. While each case therefore must be examined on its own facts, the cases heretofore decided by this court compel us to find that matters involving CATV service, which by its very nature is engaged in both intercommunity and interstate commerce and is in part regulated by the Federal Communications Commission because of the interstate nature of the business (see 47 C.F.R. pt. 76 (1981)), must be of statewide concern. It would be difficult, if not impossible, to perceive how a parking garage located in the City of Omaha would be of statewide concern because of its connection with highways leading throughout the state (see *Omaha Parking Authority v. City of Omaha,* 163 Neb. 97, 77 N.W.2d 862 (1956)) and not find that television signals, having the ability to travel throughout the state and into other states from Omaha and vice versa, could be held to be of purely local concern. We believe that the Legislature was perfectly within its authority in determining that the regulation of CATV was a matter of statewide concern, and the adoption of §§ 18-2201 et seq. takes precedence over any home rule charter of the City of Omaha to the contrary.

Having determined therefore that there was nothing which was required to be submitted to a vote of the electors of the City of Omaha, we must, of ne-

cessity, find that Hall does not have standing to bring this case as a qualified elector. He has not alleged any facts showing he has suffered a legal injury by reason of his being denied the right to vote on this matter.

We turn then to Hall's claim that he has a right to institute this proceeding by reason of his being the owner of a television set and desirous of obtaining the services of cable television for himself and other residents, provided the service is of high quality and at reasonable rates. There is no question that § 18-2201 imposes upon the mayor and city council the responsibility to prescribe reasonable quality standards for service and to regulate and fix reasonable and compensatory rents or rates for such service. If, indeed, a ratepayer filed a proper petition setting out facts from which it could be concluded that the rates approved by the mayor and city council were not reasonable and compensatory, a suit in the District Court of the appropriate county could be maintained. That is not, however, the case presented to us here. In the first instance, Hall's allegations that the rates are not reasonable are based not upon any facts but upon mere conclusions derived from Hall's objection to the preincorporation agreement entered into between Cox Cable of Atlanta and the various individual stockholders. The fact that Cox Cable has guaranteed its stockholders a certain value to their stock, payable in the future, without more, does not allege facts showing that the rate approved is not reasonable. This is particularly true where, as here, the city received six responses to its invitation to bid and, after examination, selected Cox Cable. While one might question the effect of such an arrangement, we find no allegations of fact in this petition which raise a valid issue of fact concerning the rates established by the city council in this matter. Hall simply fails to allege any facts showing how he is legally in-

jured by what has taken place.

In the case of *Nebraska Telephone Co. v. State,* 55 Neb. 627, 76 N.W. 171 (1898), this court was presented with a somewhat similar situation. The plaintiff, Yeiser, a citizen of the city of Omaha, desired a telephone placed in his law office for his own use. He requested the telephone company to furnish him an instrument properly connected and afford him telephone service. The telephone company refused to comply with this request unless Yeiser would pay it for such instrument and service the sum of $5 per month in advance. Yeiser claimed that the sum was an unreasonable and exorbitant charge and refused to pay the same, but tendered the telephone company $9 as compensation for the service required of it for 3 months and demanded that it supply him with the telephone and telephone service for that length of time. In rejecting Yeiser's claim, this court said in part at 635-37, 76 N.W. at 73-74: "Where the legislature has fixed the compensation which a public service corporation may exact for the performance of a service, then the reasonableness of the compensation so fixed by the legislature—that is, whether the limiting of the corporation to the compensation fixed by the statute would result in a confiscation of the corporation's property —is a judicial question. [Citation omitted.] But the power—the jurisdiction—to determine what compensation a public service corporation may exact for service to be rendered by it we understand to be a legislative and not a judicial function. . . .

. . . .

"The relator must address himself for relief from the grievances of which he complains to the legislative power of the state—to the legislature itself, to the board of transportation, to the mayor and council of the city of Omaha. If the compensation now charged and exacted by the telephone companies of the state is exorbitant and unreasonable, we must

presume that the board of transportation, the mayor and council of the city of Omaha, and the legislature of the state, one and all of them, will investigate the matter and prescribe a scale of reasonable charges."

An examination of cases from both this jurisdiction and others as well discloses that a ratepayer does not have legal standing to attack a rate established by a legislative body, absent a showing of discrimination or a violation of statute, and solely on the basis that the ratepayer thinks the service should be provided more cheaply. *Western Union Telegraph Co. v. Call Publishing Co.,* 44 Neb. 326, 62 N.W. 506 (1895); *Reimer v. City of O'Neill,* 189 Neb. 151, 201 N.W.2d 706 (1972); *Rutherford v. City of Omaha,* 183 Neb. 398, 160 N.W.2d 223 (1968); *St. Paul Book & S. Co. v. St. Paul Gaslight Co.,* 130 Minn. 71, 153 N.W. 262 (1915); *Ga. Power Co. v. Allied Chemical Corp.,* 233 Ga. 558, 212 S.E.2d 628 (1975); *City of Houston v. Public Utility Com'n,* 599 S.W.2d 687 (Tex. Civ. App. 1980); *Patton v. Chattanooga,* 108 Tenn. 197, 65 S.W. 414 (1901).

It is clear from the law that not everyone is entitled to sue anyone for whatever reason he or she may choose. One must have some legal interest in the outcome of the litigation in order to maintain suit. See Green, *The Public Plaintiff Comes to Nebraska: An Essay on the Limits of State Judicial Power,* 13 Creighton L. Rev. 31 (1979). In the recent case of *Stahmer v. Marsh,* 202 Neb. 281, 284, 275 N.W.2d 64, 66 (1979), we said: "Before any party can invoke the jurisdiction of the court he must have standing to sue. He must have some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy. See 59 Am. Jur. 2d, Parties, § 26, p. 374. A plaintiff must have some remedial interest which the law of the forum can recognize and enforce. Dafoe v. Dafoe, 160 Neb. 145, 69 N.W.2d 700; Davies v. De Lair, 148 Neb. 395, 27 N.W.2d 628. In order to

maintain an action to enforce private rights the plaintiff must show that he will be benefited by the relief to be granted."

And in *West Fort Residents Assn. v. Housing Auth. of City of Omaha,* 205 Neb. 397, 399, 288 N.W.2d 27, 29 (1980), we said: "A person seeking to restrain the act of a municipal body must show some special injury peculiar to himself aside from and independent of the general injury to the public unless it involves an illegal expenditure of public funds or an increase in the burden of taxation." In the instant case Hall has failed to allege any facts which, as an "owner of a television set," would entitle him to maintain this action.

Hall has neither sought the service and become a ratepayer nor made any demand upon the City of Omaha to review the rates. While his letter of September 8, 1980, set out as one of his grounds "excessive rates," he did not ask that the rates be adjusted but only that the franchise be declared void. This, of course, was not the appropriate relief to be requested by a ratepayer, let alone a prospective ratepayer. If the rate is unreasonable, as contemplated by § 18-2201, the ratepayer must first petition the city council and then, and only then, bring a lawsuit if he can allege sufficient facts to state a cause of action.

Hall's claim that certain information was withheld from the City of Omaha, thereby causing the council to approve a rate higher than it would otherwise have approved, does not entitle him to maintain this action. If, indeed, information was withheld from the city which would have caused it to disapprove the rate, or amounts to a fraud upon the city, the city, in the first instance, must make that determination and that demand. As we noted recently in *Lake v. Piper, Jaffray & Hopwood Inc., ante* p. 570, 575, 324 N.W.2d 660, 662 (1982): " 'Ordinarily a demand upon the responsible officers of the govern-

mental subdivision or municipal corporation that they take action is necessary and a condition precedent to the right of a taxpayer to maintain an action for the recovery of funds on behalf of the governmental entity.' " See, also, *Evans v. Metropolitan Utilities Dist.,* 184 Neb. 172, 166 N.W.2d 411 (1969); *Sesemann v. Howell,* 195 Neb. 798, 241 N.W.2d 119 (1976). We further said in the *Lake* case, *supra* at 575, 324 N.W.2d at 663: "The rule is clear. A prior demand is necessary before an action may be commenced." There is no allegation from which it may be concluded herein that Hall has met that requirement or made that demand. Even if an inappropriate rate was established, a fact we do not determine, seeking to void the entire franchise would, under these facts, be beyond the authority of a court.

His last claim for standing is that he is a resident of the City of Omaha. That gives him even less right than a taxpayer to maintain this suit. Having therefore failed to show how or in what manner he has standing, the trial court was correct in sustaining the demurrers.

At the outset we noted that the appellees Green and Hassett had filed answers as members of the city council. In view of the fact that we have determined that Hall has no standing to maintain this suit, their answers are mere nullities and the trial court was correct in disregarding them when dismissing the suit. Having thus decided the case, we need not consider Hall's other assignments of error or appellees' cross-appeal. The judgment of the trial court is affirmed.

AFFIRMED.

CLINTON, J., participating on briefs.